STATE, Respondent, v. LAMBERT, Appellant.

*No. State 91. Argued January 2, 1975.—Decided June 3, 1975.*
(Also reported in 229 N. W. 2d 622.)

524

For the appellant there was a brief by *Walther &
Halling* of Milwaukee, attorneys, and *David L. Walther*
of Milwaukee and *Virginia W. Sperry* of Jefferson, of
counsel, and oral argument by *David L. Walther*.

For the respondent the cause was argued by *Bruce
A. Craig* and *David J. Becker*, assistant attorneys gen-
eral, with whom on the brief was *Victor A. Miller*, at-
torney general.

HEFFERNAN, J. On August 20, 1971, Mitchell Lambert,
a master distributor for Holiday Magic, Inc., was
found guilty of the charge of promoting participation
in a chain distributor system, in violation of Wisconsin
Administrative Code, sec. AG 122.03.[1] That regulation
was promulgated pursuant to sec. 100.20, Stats.[2]

---

[1] "AG 122.01 **Unfair trade practice.** The promotional use of a
chain distributor scheme in connection with the solicitation of
business investments from members of the public is an unfair trade
practice under section 100.20, Wis. Stats. When so used the scheme
serves as a lure to improvident and uneconomical investment.
Many small investors lack commercial expertise and anticipate un-
realistic profits through use of the chance to further perpetuate a
chain of distributors, without regard to actual market conditions
affecting further distribution and sale of the property purchased
by them or its market acceptance by final users or consumers.
Substantial economic losses to participating distributors have oc-
curred and will inevitably occur by reason of their reliance on per-
petuation of the chain distributor scheme as a source of profit."

"AG 122.02 **Definitions.** (1) 'Chain distributor scheme' is a sales
device whereby a person, upon a condition that he make an in-
vestment, is granted a license or right to recruit for profit one or
more additional persons who also are granted such license or right
upon condition of making an investment and may further perpetu-

Intentional failure to obey a regulation adopted pursuant to the administrative code is subject to the penalties imposed by sec. 100.26 (3).[3]

The county court fined Lambert $2,000 and sentenced him to one year of imprisonment, but placed him on probation. The county court's judgment was appealed to the circuit court for Milwaukee county; and on April

---

ate the chain of persons who are granted such license or right upon such condition. A limitation as to the number of persons who may participate, or the presence of additional conditions affecting eligibility for the above license or right to recruit or the receipt of profits therefrom, does not change the identity of the scheme as a chain distributor scheme.

"(2) 'Investment' is any acquisition, for a consideration other than personal services, of personal property, tangible or intangible, for profit or business purposes, and includes, without limitation, franchises, business opportunities and services. It does not include real estate, securities registered under chapter 551, Wis. Stats., or sales demonstration equipment and materials furnished at cost for use in making sales and not for resale.

"(3) 'Person' includes partnerships, corporations and associations."

"AG 122.03 **Prohibition.** No person shall promote, offer or grant participation in a chain distributor scheme."

[2] "100.20 **Methods of competition and trade practices.** (1) Methods of competition in business and trade practices in business shall be fair. Unfair methods of competition in business and unfair trade practices in business are hereby prohibited.

"(2) The department, after public hearing, may issue general orders forbidding methods of competition in business or trade practices in business which are determined by the department to be unfair. The department, after public hearing, may issue general orders prescribing methods of competition in business or trade practices in business which are determined by the department to be fair."

[3] "(3) Any person who violates any provision of section 100.04, 100.15, 100.19, 100.20 or 100.22, or who intentionally refuses, neglects or fails to obey any regulation made under section 100.04, 100.19 or 100.20, shall, for each offense, be punished by a fine of not less than twenty-five dollars nor more than five thousand dollars, or by imprisonment in the county jail for not more than one year, or by both such fine and imprisonment."

17, 1973, the judgment of the county court was affirmed by order. Lambert has appealed from that order to the supreme court.

The underlying administrative regulation, sec. AG 122.03, was considered and found constitutional by this court in *HM Distributors of Milwaukee v. Department of Agriculture* (1972), 55 Wis. 2d 261, 198 N. W. 2d 598.

The validity of sec. 100.20, Stats., was also challenged. This court held that the department regulations did not exceed the delegated statutory authority, that they were promulgated in accordance with the required rule-making procedures, that they were. not vague or overbroad, and that they did not violate constitutional rights of freedom of speech or the right to make economic investments.

The general trade practices of Holiday Magic, for whom Lambert was a master distributor, are outlined in the *HM Distributors Case.* In the instant case, the challenge to the same statutes is similar. The *HM Distributors Case* was for declaratory judgment to determine the validity of the rules. In this case, the question is directed to the appropriateness and constitutionality of a criminal conviction under the same statutes and regulations.

On this appeal, the sufficiency of the evidence, assuming the regulations and statutes are constitutional and valid, is not questioned. Lambert attacks the enforcement scheme on the grounds that art. IV, sec. 1 of the Wisconsin Constitution, which reserves the legislative power of the state to the senate and assembly, cannot be delegated to an administrative agency to create a crime or call for the imposition of penalties. Lambert argues that it is the administrative code provisions, AG 122.01, ff., rather than the statute, that define a prohibited chain distributor scheme. He contends that the code, rather than the statute, sets the standards,

and accordingly legislative power has been unconstitutionally delegated to the department of agriculture.

The defendant's argument is without merit. The only question posed is whether the legislature's delegation set reasonable limits for agency action and whether the agency stayed within those limits in promulgating the rules. We conclude that the legislature set proper limits in sec. 100.20 (1), Stats., that the department of agriculture confined its rules to the limits imposed, and that it was constitutionally proper for the legislature in sec. 100.26 (3) to authorize the imposition of criminal penalties for the violation of department rules adopted pursuant to sec. 100.20.

Legislative powers may be delegated to administrative agencies. *State ex rel. Wisconsin Inspection Bureau v. Whitman* (1928), 196 Wis. 472, 220 N. W. 929. The issue is not whether legislative power may be delegated, but whether the legislature has sufficiently limited and defined its delegation of power to an administrative agency, so that it is the will of the legislature that is being carried out and not that of the agency. *United Gas, Coke & Chemical Workers v. Wisconsin Employment Relations Board* (1949), 255 Wis. 154, 38 N. W. 2d 692; *Olson v. State Conservation Comm.* (1940), 235 Wis. 473, 293 N. W. 262.

The delegation of legislative power to the department of agriculture to make rules is set forth in sec. 100.20 (1), Stats.:

"(1) Methods of competition in business and trade practices in business shall be fair. Unfair methods of competition in business and unfair trade practices in business are hereby prohibited."

Sec. 100.20 (2), Stats., specifically authorizes the department to issue general orders implementing the prohibitions set forth in sub. (1). The identical language,

which appeared as sec. 110.04 (1) (a), enacted as ch. 182, Laws of 1935, was found to be an appropriate standard by which the legislature could constitutionally delegate legislative powers, limited in scope, to the governor to promulgate codes under the little NRA, the Wisconsin Recovery Act. The standards were found sufficient and the delegation of authority was upheld in *Petition of State ex rel. Attorney General* (1936), 220 Wis. 25, 264 N. W. 633.

A question that would ordinarily flow from a determination that the delegation is proper is whether the department of agriculture in fact stayed within the delegated statutory limits by the promulgation of ch. AG 122 of the administrative code. We need not discuss that question here, for it was specifically decided affirmatively in *HM Distributors of Milwaukee, supra.*

Additionally, contrary to the assertions of the defendant on this appeal, the legislature may constitutionally create a criminal penalty for violation of the department's rule. Sec. 100.26 (3), Stats., makes a violation for any provision of sec. 100.20 or any regulation made under that section punishable by fine or by imprisonment or by both. The propriety and constitutionality of imposing criminal sanctions for the violation of a properly enacted administrative regulation was upheld in *United States v. Grimaud* (1911), 220 U. S. 506, 31 Sup. Ct. 480, 55 L. Ed. 563. Therein, the United States Supreme Court stated that the Congress could confer, within limits, legislative powers to an administrative agency, *i.e.*, the power to "fill up the details" necessary for the enforcement of statutory guidelines by the promulgation of administrative rules and regulations, ". . . the violation of which could be punished by fine or imprisonment fixed by Congress, or by penalties fixed by

Congress or measured by the injury done." *Grimaud*, page 517.

The Wisconsin legislature specifically assigned criminal sanctions for the violation of department of agriculture rules and regulations promulgated pursuant to the legislature's delegation of authority. Sec. 100.26 (3), Stats., which sets the criminal penalty for a violation of ch. AG 122, is, under the holding of *Grimaud*, constitutional. It is the legislature, not the agency, which has determined that violations of agency rules are punishable as crimes. The cases to the contrary cited by the defendant are inapposite to this proposition.

Lambert argues, however, that sec. 100.20 (1), Stats., is unconstitutionally vague, because it does not sufficiently define unfair methods of competition or unfair trade practices and, hence, fails to give notice of the practices prohibited. While that may well be true in respect to the statute when considered alone, the technique employed by the legislature—the delegation to an agency to "fill up the details"—is designed to give specificity to the nature of prohibited trade practices. The administrative regulation under which Lambert is charged is specific, and secs. AG 122.01, 122.02, and 122.03, as we held in *HM Distributors, supra,* are not void for vagueness.

Lambert also asserts that the prohibition of the promotion of chain distributor schemes infringes on protected areas of free speech and the regulation is therefore unconstitutional under the first amendment of the United States Constitution and the equivalent free speech provisions of the Wisconsin Constitution. That general proposition was advanced by the same attorney in *HM Distributors, supra,* decided by this court on June 30, 1972. The rule of law and the rationale employed by this court in disposing adversely of that issue then is substantially dispositive of the freedom-of-speech issue in this case. It is surprising and inexplicable that the

attorney for the defendant made no reference to the discussion of the free-speech issue ruled on in the earlier case. We therein stated:

"The United States Supreme Court has held that the constitutional protection afforded free speech does not apply to commercial advertising, and we find entirely and obviously correct the federal appeals court holding that the nonapplicability extends to the promoting of products." (pp. 272, 273)

We pointed out in *HM Distributors* that the right to prohibit or to curtail such oral conduct derives from the fact that under properly promulgated and constitutional regulations, the promotion itself is criminal in nature. In *HM Distributors*, we relied primarily upon *Valentine v. Chrestensen* (1942), 316 U. S. 52, 54, 62 Sup. Ct. 920, 86 L. Ed. 1262. That case held flatly that the constitutional protection afforded free speech does not apply to commercial matters.

In a supplementary memorandum to their brief, attorneys for the defendant on this appeal urge that the pronouncements of the *Valentine Case* in respect to free speech recently have been so modified by cases of the United States Supreme Court as to give some constitutional protection to commercial utterances. We do not disagree with counsel in that position. Two cases, *Pittsburgh Press Co. v. Human Relations Comm.* (1973), 413 U. S. 376, 93 Sup. Ct. 2553, 37 L. Ed. 2d 669, and *Lehman v. City of Shaker Heights* (1974), 418 U. S. 298, 94 Sup. Ct. 2714, 41 L. Ed. 2d 770, have deteriorated the flat pronouncement of *Valentine* that commercial speech is not entitled to first amendment protection. But the fact that commercial speech may in some circumstances be entitled to first amendment protection does not lead to the conclusion that the promotion of a chain distributorship declared to be a criminal act under the laws of Wisconsin is entitled to protection. That point is specifically considered in the *Pittsburgh Press Co.*

*Case* relied upon by the defendant. Therein the United States Supreme Court stated:

"Any First Amendment interest which might be served by advertising an ordinary commercial proposal and which might arguably outweigh the governmental interest supporting the regulation is altogether absent when the commercial activity itself is illegal and the restriction on advertising is incidental to a valid limitation on economic activity." (p. 389)

That same rationale was utilized by the United States Supreme Court in *Giboney v. Empire Storage Co.* (1949), 336 U. S. 490, 69 Sup. Ct. 684, 93 L. Ed. 834. In that case there was an undisputed finding that certain union activities violated a Missouri statute forbidding agreements in restraint of trade. The restraint of trade in that case was implemented by picketing a commercial enterprise. The picketers argued in that case that an injunction to prohibit the activity in restraint of trade —the picketing—was unconstitutional because it abridged free speech, *i.e.*, picketing to publicize the circumstances of the dispute. The court stated that, in the particular instance, the injunction did no more than enjoin an offense against the state law, a felony. The court said:

"It rarely has been suggested that the constitutional freedom for speech and press extends its immunity to speech or writing used as an integral part of conduct in violation of a valid criminal statute. We reject the contention now. Nothing that was said or decided in any of the cases relied on by appellants calls for a different holding." (p. 498)

The rule of *Giboney* remains effective and the language of that opinion is appropriate to the present defendant's interpretation of *Pittsburgh Press* and *Lehman*. The supreme court in *Giboney* also stated:

"Such an expansive interpretation of the constitutional guaranties of speech and press would make it practically impossible ever to enforce laws against agreements in

restraint of trade as well as many other agreements and conspiracies deemed injurious to society." (p. 502)

In accordance with the rationale of *Giboney* and of *Pittsburgh Press* quoted above, speech used to promote a criminal scheme is not entitled to first amendment protection. Neither the United States Constitution nor the Constitution of the State of Wisconsin are violated by the statutorily approved regulations and penalties that prohibit chain distributorships.

Although Lambert did not question the sufficiency of the evidence in the sense that the evidence submitted to the jury failed to show guilt beyond a reasonable doubt, nevertheless, on motions after verdict, he argued that certain hearsay evidence could not be used to show that he promoted a chain distributor scheme. He argues that the exception to the hearsay rule that would permit the utterances of co-conspirators to be used against him as vicarious admissions is not applicable unless there was first proof of a conspiracy and that he was a member of it.

In this case, an investigator for the state department of justice testified at trial to what was said by others in the presence of Lambert concerning the promotion of the chain distributor scheme. Although Lambert argues that, for this to be admissible, the jury had to find beyond a reasonable doubt that a conspiracy existed between Lambert and the others at the time the utterances were made, no instruction in respect to conspiracy was requested by Lambert's attorney at trial. Nor was there an objection to this hearsay testimony. This evidentiary issue is raised for the first time on appeal. While, under *Claybrooks v. State* (1971), 50 Wis. 2d 79, 183 N. W. 2d 139, when the error is plain and fundamental and affects the substantial justice of the trial, we will consider an error for the first time on appeal, we conclude that the admission of the hearsay statement was not error. Quite aside from the co-conspirator's

vicarious admission rule, the hearsay statements in the instant case were properly admissible as Lambert's adoptive admission. They were made in Lambert's presence. It is assumed that, had he not acquiesced in those statements, he would not have stood silent. McCormick, *Evidence* (2d ed.), pp. 649–651, sec. 269; 4 Wigmore, *Evidence* (Chadbourn rev.), p. 100, sec. 1070. *See also:* Rule 507, Model Code of Evidence, Authorized and Adoptive Admissions, p. 246.

We need not consider whether this evidence would have been admissible under the co-conspirators exception. Under the circumstances, it was admissible whether or not a conspiracy existed, and the fact that the jury was not instructed on conspiracy is irrelevant.

Lambert also claims that he is entitled to a new trial because of prejudicial newspaper publicity. The evening before the case went to the jury, an article appeared in the local paper headlined, "State to Crack Down on Chain Distributors." That story reported that the attorney general had announced a "crackdown" to curb illegal chain distributor schemes in Wisconsin. The attorney general stated that a court action had been filed against four chain distributor companies in the state of Wisconsin. Holiday Magic, Inc., with whom defendant Lambert was associated, was listed as one of the defendants. Lambert was not mentioned in the story. The trial judge read the story. However, he did not call it to the attention of either counsel, and they were not aware of its existence. Accordingly, defense counsel did not make any motions requesting that the judge take special precautions to insure that the jury had not been contaminated as a result of this publicity. The trial judge, however, without calling the matter to the attention of the jurors or to the attorneys, sua sponte gave a special instruction in which he advised the jurors:

"So forget about any other defendants or in any other cases or any other cases pending; whether they

are civil or criminal . . . [T]he facts [u]sually in other cases are different. We're trying one case here on this issue."

Counsel for Lambert argues, relying on *Margoles v. United States* (7th Cir. 1969), 407 Fed. 2d 727, that the judge should sua sponte have questioned the jury to determine whether the jurors had been prejudiced. *Margoles* did indeed indicate that "where prejudicial publicity is brought to the court's attention during a trial" (p. 735), the trial judge must ascertain whether any jurors were exposed to such publicity, and those jurors that were must be examined individually and out of the presence of other jurors. While the procedure recommended by the Seventh Circuit Court of Appeals would be appropriate in cases where prejudice appeared (we recommend it in a case where it is), the trial judge's failure to follow that procedure in the instant case does not entitle Lambert to a new trial.

In *Margoles*, the information was clearly prejudicial to the defendant, and the seventh circuit predicated its admonition on the *prejudicial* nature of the publicity. In the instant case, the story was not prejudicial to Lambert. During the trial of the case, the jury became aware, from the evidence, that the attorney general's office was investigating and prosecuting the chain distributor scheme which went by the name of Holiday Magic. Nothing in the news article brought facts to the attention of the jury that they did not already know from the testimony properly admitted into the record. The story was a straightforward news account.

Under these circumstances, we conclude that the trial judge was not required to question the jurors; and where, as here, the story itself was not prejudicial, a special admonition to the jury that only the facts before them were to be considered was more than sufficient to preserve the fairness of the trial and save it from the

taint of any possible prejudice. Even that admonition was probably unnecessary.

Even were the newspaper article more questionable, a trial court's denial of a motion for a new trial on the basis of adverse publicity is to a degree discretionary. We said in *Oseman v. State* (1966), 32 Wis. 2d 523, 530, 145 N. W. 2d 766:

"[U]nless a newspaper article is so prejudicial as to influence the verdict of the jury, it is solely within the judge's discretion as to whether a mistrial is in order."

We believe that, in view of the nature of this news article, which did not mention Lambert, that it was within the discretion of the trial judge to conclude that the article was not prejudicial and did not influence the jury verdict against Lambert. He properly denied the motion for a new trial.

Counsel also argues that errors committed by the trial court in the course of instructions to the jury require a new trial in the interests of justice. As the trial judge was giving the instruction on substantial evidence, he interrupted his presentation and stated to the assistant district attorney:

"Motive is—motive is not involved. You are not asking for motive?
"*Mr. Tesch:* I will withdraw that request.
"*The Court:* 175. Motive.
"*Mr. Tesch:* No, all right. Take it out.
"*The Court:* You asked for it. Not involved."

Lambert contends that this exchange prejudiced him because the jury could have interpreted the discussion to mean intent rather than motive, and therefore this exchange tended to instruct the jury that intent to commit the crime was not an element of which the jury had to be satisfied. Taking the transcript of the instructions as a whole, the jury could not have been

misled. The court specifically instructed the jury that Lambert had been charged with "intentionally" promoting the chain distributor scheme. In another place, in the course of instructions, the trial judge explained that "intent" must be specifically found. It is not reasonable to conclude, in light of the totality of the instructions, that the jury could have confused intent with motive. In any event, it is inconceivable that this interchange, inappropriate as it might have been, could furnish grounds for granting a new trial in the interest of justice. We said in *Lock v. State* (1966), 31 Wis. 2d 110, 118, 142 N. W. 2d 183:

"In order for this court to exercise its discretionary power under sec. 251.09, Stats., it should clearly appear from the record that for some reason it is probable there has been a miscarriage of justice. In order for this court to exercise its discretion and for such a probability to exist we would at least have to be convinced that the defendant should not have been found guilty and that justice demands the defendant be given another trial."

We cannot conclude from the evidence that the defendant should not have been found guilty or that he would be more likely to receive an acquittal had these alleged errors not occurred. Justice does not require that Lambert be given a new trial.

*By the Court.*—Order affirmed.