UNITED STATES of America

v.

**Ralph PIATTI, Defendant.**

No. 76 CR 261.

United States District Court,
E. D. New York.

Aug. 2, 1976.

David G. Trager, U. S. Atty, E. D. of N. Y. by Jonathan Marks, Asst. U. S. Atty., Brooklyn, N. Y., for plaintiff.

Ronald Kleinberg, New York City, for defendant.

MEMORANDUM AND ORDER

PLATT, District Judge.

By Notice of Motion filed May 7, 1976, defendant moved to dismiss the indictment against him on the grounds that the statutes (21 U.S.C. §§ 811(a) and 812) upon which the indictment is based are unconstitutional in that they represent an improper delegation of legislative power to the Executive Branch of the Federal Government and in that they are violative of due process for failing to warn the defendant that methaqualone is a controlled substance the importation of which is subject to criminal sanctions.

The indictment charges a conspiracy between the defendant and two unindicted co-conspirators, Gary Horowitz and Michael Kardonick, to import into the United States from Lisbon, Portugal, approximately 26,000 tablets of methaqualone, "a Schedule II controlled substance," in violation of Title 21 United States Code Sections 952(a) and 963.

Section 963 of Title 21 of the United States Code (part of subchapter II of Chapter 13 entitled Drug Abuse Prevention and Control) provides in pertinent part that:

"Any person who attempts or conspires to commit any offense defined in this subchapter * * *" is in violation of the law.

Section 952(a) of the same subchapter provides in pertinent part that:

"It shall be unlawful to import into the customs territory of the United States from any place outside thereof (but within the United States), or to import into the United States from any place outside thereof, any controlled substance in schedule I or II of subchapter I of this chapter * * *"

Schedule II of subchapter I is described and set forth in Sections 811 and 812 of Title 21 U.S.C. Section 811 provides in pertinent part with respect thereto as follows:

"(a) The Attorney General shall apply the provisions of this subchapter to the controlled substances listed in the schedules established by section 812 of this title and to any other drug or other substance added to such schedules under this subchapter. Except as provided in subsections (d) and (e) of this section, the Attorney General may by rule—

"(1) add to such a schedule or transfer between such schedules any drug or other substance if he—

(A) finds that such drug or other substance has a potential for abuse, and

(B) makes with respect to such drug or other substance the findings prescribed by subsection (b) of section 812 of this title for the schedule in which such drug is to be placed; or

(2) remove any drug or other substance from the schedules if he finds that the drug or other substance does not meet the requirements for inclusion in any schedule.

Rules of the Attorney General under this subsection shall be made on the record after opportunity for a hearing pursuant to the rulemaking procedures prescribed by subchapter II of chapter 5 of Title 5. Proceedings for the issuance, amendment, or repeal of such rules may be initiated by the Attorney General (1) on his own motion, (2) at the request of the Secretary, or (3) on the petition of any interested party.

"(b) The Attorney General shall, before initiating proceedings under subsection (a) of this section to control a drug or other substance or to remove a drug or other substance entirely from the schedules, and after gathering the necessary data, request from the Secretary a scientific and medical evaluation, and his recommendations, as to whether such drug or other substance should be so controlled or removed as a controlled substance. In making such evaluation of recommendations, the Secretary shall consider the factors listed in paragraphs (2), (3), (6), (7), and (8) of subsection (c) of this section and any scientific or medical considerations involved in paragraphs (1), (4), and (5) of such subsection. The recommendations of the Secretary shall include recommendations with respect to the appropriate schedule, if any, under which such drug or other substance should be listed. The evaluation and the recommendations of the Secretary shall be made in writing and submitted to the Attorney General within a reasonable time. The recommendations of the Secretary to the Attorney General shall be binding on the Attorney General as to such scientific and medical matters, and if the Secretary recommends that a drug or other substance not be controlled, the Attorney General shall not control the drug or other substance. If the Attorney General deter-

mines that these facts and all other relevant data constitute substantial evidence of potential for abuse such as to warrant control or substantial evidence that the drug or other substance should be removed entirely from the schedules, he shall initiate proceedings for control or removal, as the case may be, under subsection (a) of this section.

"(c) In making any finding under subsection (a) of this section or under subsection (b) of section 812 of this title, the Attorney General shall consider the following factors with respect to each drug or other substance proposed to be controlled or removed from the schedules:

"(1) Its actual or relative potential for abuse.

(2) Scientific evidence of its pharmacological effect, if known.

(3) The state of current scientific knowledge regarding the drug or other substance.

(4) Its history and current pattern of abuse.

(5) The scope, duration, and significance of abuse.

(6) What, if any, risk there is to the public health.

(7) Its psychic or physiological dependence liability.

(8) Whether the substance is an immediate precursor of a substance already controlled under this subchapter."

Section 812 of Title 21 United States Code provides in pertinent part that:

"(a) There are established five schedules of controlled substances, to be known as schedules I, II, III, IV, and V. Such schedules shall initially consist of the substances listed in this section. The schedules established by this section shall be updated and republished on a semi-annual basis during the two-year period beginning one year after the date of enactment of this subchapter and shall be updated and republished on an annual basis thereafter.

"(b) Except where control is required by United States obligations under an international treaty, convention, or protocol, in effect on the effective date of this part, and except in the case of an immediate precursor, a drug or other substance may not be placed in any schedule unless the findings required for such schedule are made with respect to such drug or other substance. The findings required for each of the schedules are as follows:

\*     \*     \*     \*     \*     \*

"(2) Schedule II.—

(A) The drug or other substance has a high potential for abuse.

(B) The drug or other substance has a currently accepted medical use in treatment in the United States or a currently accepted medical use with severe restrictions.

(C) Abuse of the drug or other substances may lead to severe psychological or physical dependence.

\*     \*     \*     \*     \*     \*

"(c) Schedules I, II, III, IV, and V shall, unless and until amended pursuant to section 811 of this title, consist of the following drugs or other substances, by whatever official name, common or usual name, chemical name, or brand name designated:

\*     \*     \*     \*     \*     \*

"Schedule II
[List of drugs not including methaqualone]"

In the Historical Note set forth in the United States Code Annotated published by the West Publishing Company, at the end of § 812, the following paragraph appears:

"Change, Updating, and Republication of Schedules of Controlled Substances. For the current schedules of controlled substances as established by this section, as they are administratively changed, updated, and republished from time to time, see Part 308, Chapter II, of Title 21 of the Code of Federal Regulations. For changes subsequent to the current edition of the Code of Federal Regulations, see daily issues of the Federal Register."

In the Federal Register, Volume 38, No. 192 of Thursday, October 4, 1973, § 1308.12 of Title 21 of the Code of Federal Regulations were amended by adding a new paragraph (e) to read as follows:

"(e) *Depressants.* Unless specifically excepted or unless listed in another schedule, any material, compound, mixture, or preparation which contains any quantity of the following substances having a depressant effect on the central nervous system, including its salts, isomers, and salts of isomers whenever the existence of such salts, isomers, and salts of isomers is possible within the specific chemical designation:

(1) Methaqualone _____2565"

According to the same Federal Register (at p. 27517) a notice dated April 6, 1973, which was published in the Federal Register on April 11, 1973, amended on April 17, 1973 and published on April 23, 1973, proposed placement of methaqualone and its salts in Schedule II of the Comprehensive Drug Abuse Prevention and Control Act of 1970 and gave all interested persons thirty days after publication to submit their objections, comments, or requests for hearing. A hearing was requested, prehearing conferences were held on June 15 and June 29, and evidentiary hearings were held on July 17 and 18 and August 1 and 2, 1973.

The Administrative Law Judge who held such hearings found that methaqualone was a drug with a high potential for abuse and a currently accepted medical use in treatment in the United States, and that abuse of the drug may lead to severe psychological or physical dependence, all within the meaning of 21 U.S.C. § 812(b)(2)(A), (B), and (C). Such findings were reviewed and adopted without modification by the Acting Administrator of the Drug Enforcement Administration.

■ As indicated above, defendant argues that the inclusion of methaqualone in Schedule II of subchapter I of the Drug Abuse Prevention and Control Act (Title 21 U.S.C. § 812) constitutes an unconstitutional delegation of authority by Congress and is violative of due process in that it failed to apprise the defendant of the fact that methaqualone is a controlled substance, the importation of which is a crime.

In a long line of cases the Federal courts have held that Congress may validly provide a criminal sanction for violation of rules or regulations which it has empowered the President, a cabinet member or an administrative agency to promulgate. *United States v. Grimaud,* 220 U.S. 506, 31 S.Ct. 480, 55 L.Ed. 563 (1911); *McKinley v. United States,* 249 U.S. 397, 39 S.Ct. 324, 63 L.Ed. 668 (1919); *Avent v. United States,* 266 U.S. 127, 45 S.Ct. 34, 69 L.Ed. 202 (1924); *United States v. Berrigan,* 482 F.2d 171, 182–83 (3d Cir. 1973); *United States v. Brumage,* 377 F.Supp. 144, 150 (E.D.N.Y. 1974); *Pent-R-Books, Inc. v. United States Postal Service,* 328 F.Supp. 297, 312–13 (E.D.N.Y.1971); see also *State of Wisconsin v. Lambert,* 68 Wis.2d 523, 229 N.W.2d 622, 625 (1975).

According to these cases and the cases relied upon by the defendant (*infra*), this would clearly appear to be the law so long as Congress has set and designated the standards for the exercise of the delegated authority by the Executive Branch.

In the case at bar, not only is the Attorney General required to make specific findings prior to the placement of any drug in Schedule II of subchapter I of the Act, but he must, before initiating proceedings for a hearing pursuant to certain specified rule-making procedures, gather the necessary data and request from the Secretary of Health, Education and Welfare both a scientific and medical evaluation and the Secretary's recommendation with respect to the drug. Both he and the Secretary must consider the eight factors listed in § 811(c) of Title 21 U.S.C. Thereafter, as also indicated, the Attorney General must give due notice and hold a hearing pursuant to certain rule-making procedures prescribed by subchapter II of Chapter 5 of Title 5 of the United States Code. Only then may the Attorney General add a new drug such as

methaqualone to the list of drugs set forth in Schedule II (21 U.S.C. § 812).

The standards and safeguards prescribed by §§ 811 and 812 would appear to be more than sufficient to meet the objections raised in the cases relied on by the defendant herein, namely: *Schechter Corp. v. United States,* 295 U.S. 495, 55 S.Ct. 837, 79 L.Ed. 1570 (1935), and *Panama Refining Co. v. Ryan,* 293 U.S. 388, 55 S.Ct. 241, 79 L.Ed. 446 (1935).

In the *Schechter* case, Section 3 of the National Industrial Recovery Act authorized the President to approve "codes of fair competition". In summary and conclusion with respect thereto, the Supreme Court said (295 U.S. at pages 541–42, 55 S.Ct. at page 848):

> "Section 3 of the Recovery Act (15 USCA § 703) is without precedent. It supplies no standards for any trade, industry, or activity. It does not undertake to prescribe rules of conduct to be applied to particular states of fact determined by appropriate administrative procedure. Instead of prescribing rules of conduct, it authorizes the making of codes to prescribe them. For that legislative undertaking, section 3 sets up no standards, aside from the statement of the general aims of rehabilitation, correction, and expansion described in section 1. In view of the scope of that broad declaration, and of the nature of the few restrictions that are imposed, the discretion of the President in approving or prescribing codes, and thus enacting laws for the government of trade and industry throughout the country, is virtually unfettered. We think that the code-making authority thus conferred is an unconstitutional delegation of legislative power."

Similarly, in the *Panama Refining Co.* case, the President was authorized to prohibit transportation of excess petroleum in interstate and foreign commerce and a violation of any regulation or order prescribed thereunder was punishable by fine and imprisonment. In that case the court also specifically held in its invalidation of the statute (293 U.S. at page 415, 55 S.Ct. at page 246):

> "Section 9(c) is brief and unambiguous. It does not attempt to control the production of petroleum and petroleum products within a State. It does not seek to lay down rules for the guidance of state Legislatures or state officers. It leaves to the States and to their constituted authorities the determination of what production shall be permitted. It does not qualify the President's authority by reference to the basis, or extent, of the State's limitation of production. Section 9(c) does not state whether, or in what circumstances or under what conditions, the President is to prohibit the transportation of the amount of petroleum or petroleum products produced in excess of the State's permission. It establishes no criterion to govern the President's course. It does not require any finding by the President as a condition of his action. The Congress in section 9(c) thus declares no policy as to the transportation of the excess production. So far as this section is concerned, it gives to the President an unlimited authority to determine the policy and to lay down the prohibition, or not to lay it down, as he may see fit. And disobedience to his order is made a crime punishable by fine and imprisonment."

These cases, however, as we have demonstrated, are not controlling with respect to the facts herein.

■ The other half of defendant's argument is that 21 U.S.C. §§ 811 and 812 are violative of the Due Process Clause because they fail to warn the defendant that methaqualone is a controlled substance.

The same question was raised in the *Pent-R-Books, Inc.* case *supra,* and, where similar procedures were followed with respect to a rule-making hearing and publication in the Federal Register was duly made, this Court held that ample notice had been given. Similarly, the Court of Appeals for the Third Circuit held in the *Berrigan* case, *supra,* that so long as the regulation in question admits of no ambiguity whatsoever "clear, concise and fair notice of what is

prohibited" has been given. (482 F.2d at page 183).

In the case at bar, Sections 811 and 812 of Title 21 of the United States Code make it clear that the Attorney General is empowered to add to the list of drugs contained in Schedule II of subchapter I of the Act so long as he fulfills all of the requirements and procedures contained therein. Moreover, there is nothing ambiguous about the ultimate addition to such Schedule II of the drug methaqualone, and this fact was published in the Federal Register on October 4, 1973, in Volume 38, No. 192, at pages 27516–27520, for all the world to see.

Under the circumstances there has been no denial of due process, and for the foregoing reasons defendant's motion to dismiss the indictment herein must be and the same hereby is denied in all respects.

SO ORDERED.