STATE, Plaintiff-Respondent, V. BALESTRIERI, Defendant-Appellant.†

Court of Appeals

*No. 77–425–CR. Submitted on briefs October 23, 1978.—Decided November 20, 1978.*
(Also reported in 274 N.W.2d 269.)

† Petition to review granted January 19, 1979.

1

2

For the appellant the cause was submitted on the briefs of *Franks & Pikofsky, S.C.* of Milwaukee.

For the respondent the cause was submitted on the brief of *Bronson C. La Follette,* attorney general, and *David J. Becker,* assistant attorney general.

Before Moser, P.J., Brown and Bode, JJ.

BROWN, J.   On April 10, 1975, Mr. and Mrs. Herbert J. Weber were at their home located in Racine when the defendant, Mr. Balestrieri, arrived. Mrs. Weber and Mr. Balestrieri discussed desired improvements to their home, which included a new front porch with an awning and railing, and covering for the wood trim on the upper part of the house. That evening, Mr. Balestrieri gave them an estimate of the cost, and as a result of their agreement, a document was drawn up by Mr. Balestrieri and signed by the Webers and the defendant. That same evening the Webers gave the defendant a check in the amount of

$50.00. On the next day, Mrs. Weber caller Mr. Balestrieri to cancel the contract because her husband thought the price was too high and was of the opinion that it also included window and door trim. During the telephone conversation, Mr. Balestrieri offered to do the window and door trim for an additional $200.00. Mrs. Weber agreed to that. There was no other written document between the Webers and Mr. Balestrieri.

Thereafter, Herbert J. Weber signed a criminal complaint on August 19, 1975 in which Mr. Balistreri was charged with three violations of the regulations contained in Wis. Adm. Code ch. **Ag** 110 relating to home improvement trade practices. Wis. Adm. Code ch. **Ag** 110 was promulgated by the Department of Agriculture of the State of. Wisconsin under sec. 100.20(2), Stats. The defendant was charged under sec. 100.26(3), Stats., which provides:

Any person who violates s. 100.15, 100.19, 100.20 or 100.22, or who intentionally refuses, neglects or fails to obey any regulation made under s. 100.19 or 100.20, shall, for each offense, be fined not less than $25 nor more than $5,000, or imprisoned in the county jail for not more than one year or both.

The three violations were: (1) failure to specify the beginning and completion date in the home improvement contract, contrary to Wis. Adm. Code § **Ag** 110.05(2)(d),[1] (2) contracting for liquidated damages in excess of legal limit, contrary to Wis. Adm. Code § **Ag** 110.05

[1] Ag 110.05(2) Home improvement contracts and all changes in the terms and conditions thereof, required under this section to be in writing, shall be signed by all parties thereto, and shall clearly and accurately set forth in legible form all terms and conditions of the contract, and particularly the following:

. . . .

(d) The dates or time period on or within which the work is to begin and to be completed by the seller.

(7)[2] and (3) changing the terms of a written home improvement contract without reducing the changes to writing, contrary to Wis. Adm. Code § Ag 110.05(1).[3]

At trial, the defense offered no evidence and moved to dismiss for insufficiency of the evidence. The court took the case under advisement and rendered a written decision. The defendant was found guilty of each of the three counts and was fined $1,000 on each count. An appeal was taken to the circuit court. The circuit court affirmed the judgment of the county court. From the circuit court's judgment affirming the trial court's judgment, the present appeal has been taken.

Mr. Balestrieri's first argument is that the county court for Racine County lacked subject matter jurisdiction over this case. Balestrieri argues that this action was brought under sec. 100.20(6), Stats., which provides:

The department may commence an action *in circuit court* in the name of the state to restrain by temporary or permanent injunction the violation of any order issued under this section. (Emphasis added.)

Mr. Balestrieri proposes that since the action was brought under this section of the statutes, it properly should be before a circuit court rather than a county court.

Mr. Balestrieri's argument must fail, however. This action was not brought under sec. 100.20(6), Stats. It was brought pursuant to sec. 100.26(3), Stats. Section 100.20(6), Stats., relates to injunctive relief used to re-

---

[2] Ag 110.05(7)  Liquidated damages for breach of contract by the buyer if made a part of the contract shall not exceed 10% of the contract price and in no event more than $100.

[3] Ag 110.05 *Home Improvement contract requirements.* (1) The following home improvements contracts and all changes in the terms and conditions thereof, shall be in writing:

(a) Contracts requiring any payment of money or other consideration by the buyer prior to completion of the seller's obligation under the contract.

strain the violation of a regulation made under sec. 100.20, Stats. In the present case we are not dealing with injunctive relief. We are dealing instead with the section which provides for the imposition of criminal penalties resulting from violations of consumer protection regulations. In fact, the criminal complaint that commenced this action specifically alleged that the offenses which the defendant committed were contrary to sec. 100.26(3), Stats. Therefore, since it is a criminal complaint brought pursuant to sec. 100.26(3), the county court had subject matter jurisdiction over the criminal prosecution.

Balestrieri's next argument is that the district attorney was not a proper person to bring this prosecution for violations of Wis. Adm. Code ch. **Ag** 110. It is Balestrieri's view that the enforcement mechanism of the Wisconsin Administrative Code is vested exclusively in the Department of Agriculture which has the power to issue an injunction against a person whose business practices are found to be unfair. What Balestrieri fails to recognize is that an injunction is only one of three different sanctions that the state of Wisconsin can use in protecting the consumers. Criminal prosecution is another sanction. Where the sanction of a criminal prosecution is used, the district attorney is the proper person to initiate the action.[4] Therefore the defendant's argument that the district attorney is not the appropriate person to bring this criminal prosecution must fail.

Balestrieri finally contends that the trial court committed prejudicial error in construing sec. 100.26(3), Stats. As stated above, sec. 100.26(3), provides for

---

[4] In *State v. Lambert*, 68 Wis.2d 523, 229 N.W.2d 622 (1975), the supreme court held that the legislature may constitutionally create a criminal penalty for violation of the department's rules contrary to sec. 100.26(3), Stats. The case was prosecuted at trial by the Milwaukee County District Attorney.

criminal sanctions to anyone who "intentionally refuses, neglects or fails to obey any regulation made under sec. 100.19 or 100.20 . . . ." The trial court held that the word "intentionally" in that statute modifies only the word immediately following it, "refuses," and not the succeeding words "neglects or fails." Balestrieri claims that the trial court erred when it reached a conclusion that you cannot "intentionally neglect to do anything." He cites case law outside the state of Wisconsin for the proposition that neglect means a sense of designed refusal or unwillingness to perform one's duty with respect to another.[5] Balestrieri argues that he neglected to follow the rules and regulations set forth in the agricultural code in this case, but he says that he cannot be convicted of mere neglect unless it is proven by evidence beyond a reasonable doubt that the neglect was by design and was therefore intentional. Moreover, Balestrieri claims that the Wisconsin Supreme Court has already construed sec. 100.26(3), Stats., to provide that it is only an "[i]ntentional failure to obey a regulation adopted pursuant to the administrative code [which] is subject to the penalties imposed by sec. 100.26(3)." *State v. Lambert,* 68 Wis.2d 523, 526, 229 N.W.2d 622, 624 (1975).

We disagree. The court in *Lambert* did not construe sec. 100.26(3), Stats., to mean that any violation must be intentional before one may be subject to criminal penalties. All the court held in *Lambert* was that when one intentionally fails to obey a regulation pursuant to the Administrative Code, that person can be subjected to criminal penalties under sec. 100.26(3). The court did not discuss the question of whether unintentional violations of the Administrative Code are subject to criminal penalties as well. Therefore, *Lambert* is inapposite to the question before us.

---

[5] *In re Perkins,* 243 Mo. App. 716, 117 S.W.2d 686 (1938).

Thus, the question remains whether the word "intentionally" in sec. 100.26(3), Stats., modifies only the word "refuses" immediately following it, as the trial court held, or whether it modifies all three verbs—refuses, neglects or fails—as Mr. Balestrieri claims. While the Wisconsin Supreme Court has never construed the statute in this light, the court has said that the term "intentional negligence" is "contradictory and absurd." *Lockwood v. Belle City Street Railway Co.*, 92 Wis. 97, 113, 65 N.W. 866, 870–71 (1896). Further, the court has held that the terms negligence and inexcusable neglect are synonymous. *Krasin v. Village of Almond*, 233 Wis. 513, 519, 290 N.W. 152, 155 (1940). Since the terms negligence and inexcusable neglect are synonymous, and the term "intentional negligence" is contradictory and absurd, the term "intentional neglect" is likewise contradictory and absurd. There is no such thing as intentional neglect. To construe sec. 100.26(3), Stats., to require a showing of intentional neglect would therefore be unreasonable, and we are not permitted to construe a statute which would result in unreasonableness. As the court said in *Williams v. City of Madison*, 15 Wis.2d 430, 439, 113 N.W.2d 395, 400 (1962), "if a statute is reasonably open to any other construction, it will not be given a construction which results in unreasonableness." *Accord, Falkner v. Northern States Power Co.*, 75 Wis.2d 116, 124, 248 N.W.2d 885, 890 (1977). We therefore hold that the term "intentional" in sec. 100.26(3), Stats., only modifies the term "refuses." It does not modify the terms "neglect" or "fails."

Furthermore, we must be mindful of the fact that the legislature promulgated positive and forceful statutes to deal with certain trades including the home improvement business. We note that sec. 99.29(2), Stats. (1933), the

predecessor of sec. 100.26(3), Stats., stated the following:

Any person, acting either personally or through an agent or as agent of another, who wilfully violates any provision of subsection (3) of section 99.19 or subsection (5) of section 99.20, *or who wilfully violates or refuses, neglects or fails to obey any order or regulation made* under section 99.14, 99.16 or 99.17 shall be guilty of a misdemeanor and for each and every such offense shall, upon conviction thereof, be punished by a fine of not more than five thousand dollars or by imprisonment in the county jail for not more than one year, or by both such fine and imprisonment. (Emphasis added.)

It is very clear that the legislature, in 1933, wanted to subject to criminal penalties those people who not only wilfully violated the statues, but also those who, without premeditation, diverged from the rules.

The history of the statute makes it plain that the legislature intended that there be no excuse for failing to follow the rules. With the public outcry concerning the home improvement trade in the last several years, one would think that anyone connected with the home improvement trade would first and foremost make sure that they were following the rules explicitly. In this case, despite the clear and unconfusing guidelines mentioned in the administrative code relating to preparing a contract with consumers, Balestrieri deviated from the directions. That imprudence is specifically what the statute was designed to prevent. There is no excuse for failing to follow the code.

*By the Court.*—Judgment affirmed.