ZITLOW, Plaintiff in error, vs. THE STATE, Defendant in error.

*November 10, 1933—January 9, 1934.*

*Samuel D. Berg,* attorney, and *George J. Laikin* of counsel, both of Milwaukee, for the plaintiff in error.

For the defendant in error there was a brief by the *Attorney General, J. G. Hirschberg,* deputy attorney general, and *Herbert J. Gergen,* district attorney of Dodge county, and oral argument by *Mr. Hirschberg* and *Mr. J. E. Messerschmidt,* assistant attorney general.

WICKHEM, J.   Defendant was arrested on June 14, 1933, on information charging a violation of sec. 351.30, Stats., which provides that "Any person who shall, without just cause, desert or wilfully neglect or refuse to provide for the

support and maintenance of his wife in destitute or necessitous circumstances, . . . shall be guilty of a crime. . . ."

The defendant was a molder by trade, and during the last three years has had no steady job. He lost his job when the depression started, and the family applied for county relief immediately thereafter. The family has been supported by the relief authorities ever since. It appears that the city of Beaver Dam furnished support for defendant and his wife from May, 1931, to June, 1933. While living in the city of Juneau he received aid amounting to $465.70. The total amount of the aid received was $1,346.91. Defendant had five children, ranging in age from twenty-one months to fourteen years. During part of the period he partly took care of his family. During 1933 he had no income other than the relief furnished him. The relief director for Dodge county notified the defendant to appear for work on a highway project on April 20th. He came the following day, worked until noon, and did not return to work. He was again told to start work on May 3d, but refused to go. He was again notified on May 21st to start work on May 22d. He finally reported for work on May 29th, after his relief was cut off. He worked seven days beginning June 1st. He did not appear again either on the 10th, 12th, or 13th of June. He was arrested on the 14th of June, and was at work then.

It appears that Dodge county, when relief was required for a family, furnished this relief and set up an account in which the head of the family receiving relief was charged with the value of the supplies furnished. When the county had highway or other work available, the heads of families who were on relief were summoned to appear for work. The wage scale was $2.40 a day, and of this the person on relief would receive twenty per cent. in cash and the balance would be credited upon the past account for relief furnished. In addition, the county continued to furnish currently full relief

in kind. Upon these facts two principal questions arise. The first is whether sec. 351.30, Stats., is applicable to the situation here presented. The second is whether, assuming that it is, the evidence warrants the conclusion that its provisions have been violated.

There is no question as to the constitutionality of non-support statutes. Their validity has been attacked on various grounds and universally sustained. See note 48 A. L. R. 1195. The statute penalizes the wilful refusal to support. It applies to one whose only asset is a capacity to work. In *State v. Witham,* 70 Wis. 473, 35 N. W. 934, this court said:

"Ability and refusal to support constitute one act of delinquency; and where a man has a physical and mental power to acquire means he comes within the intent of the law. It would be an unreasonable construction to confine it to a case where the husband had actually acquired property; for, as we have said, his ability to support his wife—to discharge that most sacred of all social duties—might be as ample and complete where he had capacity to earn wages or a salary, or skill to acquire wealth, as when he possessed money itself."

There is evidence from which the jury could conclude that the defendant had the ability to work, and this must necessarily have been their conclusion in view of the verdict of guilty. But the defendant must not only have had the capacity to work but must have wilfully and without just cause neglected and refused to adopt this means of supporting his family. It is the contention of the defendant that his refusal to work was grounded upon objections to the manner in which relief was administered in Dodge county. He objected particularly, according to his claim, to the practice of paying those upon the relief in part by crediting them upon an account for relief theretofore furnished. He insisted that he should be paid his full wages in cash. He now asserts that, considering the conditions of employment, to enforce this statute will be to imprison him for debt and to

subject him to involuntary servitude, and that he will be compelled in fact to work for the county in order to discharge a debt for past relief and imprisoned for his refusal to do so.

The difficulty with defendant's position in this regard is that the relief authorities continued to furnish food and supplies to defendant and his family equal to eighty per cent. of the value of his services. The mere fact that, for purposes of bookkeeping, relief theretofore given was charged to the defendant, and that a portion of his daily wages was carried as a general credit upon this account, will not support defendant's contention that he was being compelled to work to extinguish a debt for relief theretofore furnished. It is not necessary to decide whether the relief furnished in the past constituted a debt owing by defendant to the county, or whether it was regular or proper to credit eighty per cent. of the value of defendant's services to this account.

The next contention of defendant is that the real basis of this prosecution is that defendant strongly objected to the manner of administering relief by the county; that on the occasion of at least one of his absences from work he was exercising his right as a citizen to communicate his grievances to the governor. It is defendant's conclusion that to sustain this conviction will be to use the section under which defendant is prosecuted as a club whereby county relief authorities may stifle criticism by means of prosecutions for non-support, and thus enable them to intimidate the destitute who are receiving aid from them. If this contention is sound, it furnishes a strong reason to conclude that sec. 351.30 was never intended to apply to a situation such as is here presented. Certainly it was not intended by the statute to abridge the rights of citizens to object to the manner of administering relief. The question really involved is whether a person, engaged in a dispute with his employer, based upon his contention, made in good faith, that the working conditions are unjust or intolerable, may express his objection or

enforce his contention by refusing to work, without subjecting himself to the penalty imposed by this section. We see no difference in the application of this question between the county and any other employer. Had a grocer or the proprietor of a department store offered to engage defendant to do work that he was capable of performing, with an agreement for payment in goods and cash sufficient to support his family, defendant would be in no different position than he is now. In answering the question thus presented, attention should again be called to the fact that the penalties of the statute are visited upon one who *wilfully* refuses or neglects to support his family. The term "wilful" as here used involves either a design or intent on the part of the person charged to evade the duties which the law casts upon him by reason of his marriage and parenthood, or a neglect based upon aversion or disinclination to work generally, or to work of a particular kind. If, however, the defendant in good faith, but by erroneous process of reasoning, came to the conclusion that the working conditions imposed by the county were oppressive and intolerable, his refusal to work, even though resulting in distress and want on the part of his family, would not be wilful in the sense used in the statute. Nor is the jury, upon the trial of an offense such as is here charged, to be permitted to substitute their judgment for his as to the validity of his reason for not working. They are merely to determine the facts with reference to his good faith, and unless they find this element absent they must acquit the defendant. It is of course true that the less substantial and rational the objections of the defendant to the conditions of employment, the more reasonable the conclusion that the refusal to work was actuated by improper motives rather than an objection expressed in good faith to the working conditions. But the statute cannot be made the instrumentality for enforcing upon workingmen intolerable conditions of employment by the club of a penalty for non-

support. It has no application to a *bona fide* labor dispute, and it is only in instances where the evidence justifies the conclusion that the failure to support was wilful in the sense heretofore defined, that a conviction will be upheld.

The next question is whether the evidence sustains such a conclusion upon the part of the jury. The verdict must be sustained if, upon any reasonable view of the evidence, an inference of wilful non-support may be drawn. If the only offense of the defendant had been absenting himself from work in order to present his grievances to the governor, the conviction probably could not be sustained. In this case, however, the defendant's refusals to work were frequent and extended over a sufficient period to warrant the jury in concluding that they were not motivated by a *bona fide* dispute as to the propriety and justice of the working conditions imposed by the county, and that they constituted such wilful neglect as is penalized by the statute.

*By the Court.*—Judgment affirmed.