STATE of Wisconsin, Plaintiff-Appellant-Petitioner,

v.

Ronnie D. CISSELL, Defendant-Respondent.

Supreme Court

*No. 84–891–CR. Argued October 1, 1985.—Decided December 23, 1985.*

(Also reported in 378 N.W.2d 691.)

For the plaintiff-appellant-petitioner the cause was argued by *Barry M. Levenson,* assistant attorney general, with whom on the briefs was *Bronson C. La Follette,* attorney general.

For the defendant-respondent there was a brief and oral argument by *Peter D. Goldberg,* assistant state public defender.

STEINMETZ, J. The issues of the case are:

(1) Whether the elements of sec. 52.05(1), Stats.,[1] de-

---

[1] Sec. 52.05(1), Stats., provides as follows:

"**52.05 Abandonment; uniform act.** (1) PENALTY. Any person who deserts or wilfully neglects or refuses to provide for the support and

scribing the crime of felony abandonment, are identical to the elements of sec. 52.055(1), [2] describing the crime of misdemeanor failure to support.

(2) If the elements of felony abandonment are identical to the elements of misdemeanor failure to support, does the state violate a defendant's right to equal protection or due process by charging him with the felony instead of the misdemeanor.

(3) Whether the felony abandonment statute violates due process because it is vague.

---

maintenance of his or her spouse or marital or nonmarital child under 18 years in destitute or necessitous circumstances shall be fined not more than $500 or imprisoned not more than 2 years or both. It is a defense to criminal liability that the person has just cause to desert, wilfully neglect or refuse to provide support and maintenance. The parent of any nonmarital child who has made provision for the support of such child by giving bond, or by an agreement approved by a court under s. 767.45(2), on which such parent is not in default, is not subject to this section."

[2] Sec. 52.055(1), Stats., provides as follows:

"**52.055 Failure to support.** (1) Any parent who intentionally neglects or refuses to provide for the necessary and adequate support of his or her marital or nonmarital child under 18 years, or any person who, without just cause, intentionally neglects or refuses to provide for the necessary and adequate maintenance of his or her spouse, shall be guilty of a misdemeanor and may be fined not more than $100 or imprisoned not more than 3 months in the county jail or both. The parent of any nonmarital child who has made provision for the support of such child by giving bond, or by an agreement approved by a court under s. 767.45(2), on which such parent is not in default, shall not be subject to this section. Substantial failure by the parent or person to provide for the support or maintenance for more than 21 consecutive days immediately prior to the date when complaint is made under this section shall be prima facie evidence of intent hereunder; but this provision shall not preclude a prosecution hereunder for failure to support for a lesser time. Substantial failure by the parent or person to comply with any part of a court order under ch. 767 for support of any such child under the age of 18 years or for such maintenance of his or her spouse shall be prima facie evidence of a violation of this section for prosecution under this section."

(4) Whether the felony abandonment statute creates a strict liability crime for which the penalty is unconstitutionally excessive.

Although we conclude that the elements of the two crimes are identical, we hold that there is no constitutional infirmity in the felony abandonment statute.

## FACTS

On March 2, 1979, a court liaison worker for the Milwaukee County Department of Social Services signed a criminal complaint charging the defendant, Ronnie D. Cissell, with intentionally and willfully neglecting to provide for the support and maintenance of his minor child, leaving her in destitute and necessitous circumstances, contrary to sec. 52.05(1), Stats.

The complaint alleged that the defendant had not paid any money for his child's support from 1973 through 1979, and that he had been ordered to make such payments in the amount of $12,459.33.

The defendant was arrested on August 14, 1980, pursuant to the warrant signed in March of 1979. The preliminary examination was conducted on January 7, 1983, at which time the defendant was bound over for trial.

The defendant filed several pretrial motions and motions *in limine,* including a motion to reduce the charge to the misdemeanor of failure to support under sec. 52.055, Stats., as well as a motion to dismiss based on the alleged unconstitutionality of sec. 52.05.

The Milwaukee circuit court, Judge Janine Geske, held that the defendant's constitutional rights to due process and equal protection of the law were violated by charging him with the felony and ordered that the charge against the defendant be reduced to the misdemeanor of nonsupport. The court based its holding on the conclusion that the elements of the two crimes are identical. The

court of appeals, in an unpublished decision, affirmed the circuit court's decision solely on equal protection grounds.

## IDENTICAL STATUTES

The first issue we consider is whether the felony abandonment statute has elements that are identical to the misdemeanor nonsupport statute. The circuit court construed the element of "willful" nonsupport under the felony statute to be equivalent to "intentional" nonsupport under the misdemeanor statute. The court also construed "destitute or necessitous circumstances" in the felony to mean any breach of the duty of support. Based on this construction, the need for support under the felony statute does not have to be greater than the need that satisfies the misdemeanor statute.

As a general proposition, the word willful cannot be defined without reference to its use in a specific statute. In *State v. Preston,* 34 Wis. 675, 685 (1874), we specifically noted that willful is susceptible of different meanings in different contexts. We repeated that conclusion in *Dept. of Transp. v. Transp. Comm.,* 111 Wis. 2d 80, 87, 330 N.W. 2d 159 (1983), stating that *"Preston* makes clear that there is no one and certain meaning that can be ascribed to 'wilful' which will in all cases convey its meaning."

The state relies on *Preston* to demonstrate that willful and intentional have different meanings when both terms are used in criminal statutes. The state relies specifically on the following passage from *Preston:*

"The word *willfully,* as used to denote the intent with which an act is done, is undoubtedly susceptible of different shades of meaning or degrees of intensity according to the context and evident purpose of the writer. It is sometimes so modified and reduced as to mean little more than plain *intentionally,* or *designedly.* Such is not, however, its ordinary signification when used in criminal law and penal statutes. It

210

is there most frequently understood, not in so mild a sense, but as conveying the idea of legal malice in greater or less degree, that is, as implying an evil intent without justifiable excuse." *Id.* at 683–84.

This court repeated the general principle of *Preston,* that willful usually expresses the concept of legal malice in a criminal statute, in *Dept. of Transp. v. Transp. Comm.,* 111 Wis. 2d 80, 87. From these decisions, the state argues that willful means more than intentional when both terms are used in the criminal statutes under consideration.

We are unpersuaded that the *Preston* or *Dept. of Transp.* decisions stand for the proposition that willful means more than intentional when both terms are used in these criminal statutes. The *Preston* decision compared the different meanings of willful as used in criminal statutes and noncriminal statutes. It did not compare willful and intentional when both terms are used in criminal statutes. The *Dept. of Transp.* decision also compared the meanings of willful as used in criminal and regulatory statutes. The precise issue before this court, therefore, has not been decided. We define the issue to be whether willful requires proof of a different state of mind than intentional when both terms are used in the two criminal statutes under consideration.

Section 939.23(3), Stats., defines intentionally when that term is used in the criminal code. The definition provides: " 'Intentionally' means that the actor either has a purpose to do the thing or cause the result specified or believes that his act, if successful, will cause that result." We construe this definition to be a general statement of the *mens rea* element of criminal intent crimes. Although sec. 52.055 is not part of the criminal code, it is a crime which requires proof of criminal intent by its own language. The requirement of criminal intent also is suggested by the seriousness of the penalty provision. *See*

211

*State v. Collova,* 79 Wis. 2d 473, 482, 255 N.W. 2d 581 (1977). The statutory definition of intentionally, therefore, is applicable to sec. 52.055.

In *Preston,* we defined willful to mean malice or evil intent. This definition is merely a statement of criminal intent. We do not consider it significant that *Preston* defined criminal intent in different language than sec. 939.23(3), Stats., because the legislature did not enact that statute until 1955. Furthermore, although the statute does not specifically refer to malice, that concept is embodied in the statutory definition of criminal intent. Black's Law Dictionary (5th ed. 1979), defines malice as: "The intentional doing of a wrongful act without just cause or excuse, with an intent to inflict an injury or under circumstances that the law will imply an evil intent." Black's also states that malice is not necessarily personal hate or ill will. We conclude, therefore, that malice as used to define willful has the same meaning as criminal intent under sec. 939.23(3).

Our conclusion that the term willful in sec. 52.05, Stats., has the same meaning as intentionally is supported by our previous definitions of that term. In *Zitlow v. State,* 213 Wis. 493, 498, 252 N.W. 358 (1934), the court construed willful in the abandonment statute, which was numbered sec. 351.30 at the time, to mean:

> "The term 'wilful' as here used involves either a design or *intent* on the part of the person charged to evade the duties which the law casts upon him by reason of his marriage and parenthood, or a neglect based upon aversion or disinclination to work generally, or to work of a particular kind." (Emphasis added.)

This definition equates willful and intent and does not make a distinction between the two words. This court continued to adhere to this definition in *State v. Schlueter,* 262 Wis. 602, 604, 55 N.W. 2d 878 (1952).

We conclude from our analysis that willful has the same meaning in sec. 52.05, Stats., as intentionally does in sec. 52.055.

We must next consider whether the phrase "destitute or necessitous circumstances" requires a different element of proof than failure to satisfy the duty of support. The phrase "destitute or necessitous circumstances" appears in the felony statute, sec. 52.05(1), Stats., but not in the misdemeanor statute, sec. 52.055, for failure to support. The state contends that the phrase requires proof of greater deprivation than the failure to support statute requires.

Our previous decisions construing the destitute or necessitous circumstance requirement do not support the state's argument. We have not required proof of actual and extreme deprivation. In *Brandel v. State,* 161 Wis. 532, 535, 154 N.W. 997 (1915), in analyzing the abandonment statute, the court defined necessitous circumstances essentially in terms of the standard of living to which the wife was entitled given her husband's resources:

> "A wife is in necessitous circumstances, within the meaning of the statute, when she does not have property or money available for such necessities or ordinary comforts of life as her husband can reasonably furnish, even though she has the clothing, furniture, and ornaments usually owned by a woman in her station in life or receives aid from others."

The court relied on *Brandel* in *State v. Freiberg,* 35 Wis. 2d 480, 486, 151 N.W. 2d 1 (1967), where we held that the state need not show the father's default brought about his family's immediate descent to the "lowest scale of mere human existence." The necessitous circumstance element was satisfied if the dependent party would be destitute and necessitous, but for the contribution of others. The *Freiberg* decision focused not on the deprivation of

213

the dependent party, but on the level of support that the husband could afford to provide.

None of our decisions considering the felony abandonment statute has required the state to prove a greater level of deprivation than under the misdemeanor nonsupport statute. We see no difference in the degree of deprivation of the dependents to be proven under the felony or misdemeanor statutes even though the wording is different. Our decisions make it clear that the dependents need not actually be in need of the goods and necessities of life under either statute as long as the defendant is able to provide for them. It is irrelevant if others have provided the support needed for the dependents because the defendant cannot rely on the efforts of others as a valid defense.

■ Because we construe the willful and destitute or necessitous circumstance requirements of sec. 52.05, Stats., to be the same as the elements of sec. 52.055, the two statutes have substantively identical elements.

### IDENTICAL STATUTES WITH DIFFERENT PENALTIES

The defendant contends that statutes with identical substantive elements but different penalty schemes violates due process and equal protection. Under sec. 52.05(1), Stats., abandonment can be punished by a fine of $500 or two years imprisonment or both. Under sec. 52.055(1), only a penalty of $100 or three months in jail or both can be imposed for failure to support. The defendant argues that disparate sentencing exposures for crimes with identical elements are irrational and arbitrary.

■ We consider this constitutional attack on the statute with the perspective that there is a strong presumption favoring the constitutionality of a legislative enactment.

214

*State v. Popanz,* 112 Wis. 2d 166, 172, 332 N.W. 2d 750 (1983). This court will construe the statute to preserve it if it is at all possible to do so. *Id.*

The court reaches the constitutional attacks on sec. 52.05, Stats., despite recent legislative changes which will in the future avoid some of the claimed defects in the statute. The legislature repealed secs. 52.05 and 52.055 and enacted a single, comprehensive failure to support statute in the 1985 budget bill. The new statute, sec. 940.27, differentiates between sentence exposures on the basis of the length of time that a person fails to provide support. Breach of the support duty for 120 consecutive days constitutes a class C felony and shorter breaches are punishable as a class A misdemeanor. Because sec. 52.05 still is applicable to this case, the statutory changes do not moot the issues raised by the defendant. Also, the constitutionality of identical element crimes with different penalties has broad statewide importance.

■

We are persuaded by the reasoning of *United States v. Batchelder,* 442 U.S. 114 (1979), that identical element crimes with different penalties do not violate due process or equal protection. In *Batchelder,* the United States Supreme Court held that overlapping criminal statutes with different penalty schemes do not violate constitutional principles unless the prosecutor selectively bases the charging decision upon an unjustifiable standard such as race, religion, or other arbitrary classification. *Id.* at 125, n. 9. This court concludes that the *Batchelder* reasoning concerning overlapping statutes is equally applicable to identical element crimes.

At issue in *Batchelder* were two overlapping provisions of the Omnibus Crime Control and Safe Streets Act of 1968. Overlapping statutes proscribe a variety of acts, not all of which are the same, but where some of the proscribed acts are identical. By contrast, identical statutes proscribe the same conduct; they completely overlap. The

statutory provisions under consideration in *Batchelder* both prohibited convicted felons from receiving and possessing firearms shipped in interstate commerce. The statutes were not identical, however, because the full ranges of prohibited conduct were not identical. *Id.* at 119, n. 5. The maximum penalty exposure under the two statutes also differed, even for the identical prohibited conduct. The Supreme Court, therefore, had to determine whether a defendant convicted of the offense carrying the greater penalty may be sentenced only under the more lenient provision when his conduct violates both statutes. *Id.* at 116.

The Supreme Court analyzed the problem of overlapping statutes with different penalties as an issue of prosecutorial discretion. The Court stated that: "This Court has long recognized that when an act violates more than one criminal statute, the Government may prosecute under either so long as it does not discriminate against any class of defendants." *Id.* at 123–24. Under this approach, the fact that the defendant's conduct may be chargeable under either of two statutes does not make prosecution under one or the other statute improper *per se;* the focus instead is on whether the prosecutor unjustifiably discriminated against any class of defendants.

In upholding the constitutionality of overlapping statutes with different penalties, the Supreme Court rejected three specific arguments against the validity of such statutes. The Court considered whether overlapping statutes might: (1) be void for vagueness; (2) implicate due process and equal protection interests in avoiding excessive prosecutorial discretion and in obtaining equal justice; and (3) constitute an impermissible delegation of legislative authority. *Id.* at 122–23.

The Supreme Court decided that overlapping statutes are not vague merely because they impose different penalties. A criminal statute violates due process if it fails to give fair notice of the proscribed conduct and the conse-

216

quences of violating a given criminal statute. *Id.* at 123. The Court held that overlapping statutes with different penalties provide sufficient notice:

> "Although the statutes create uncertainty as to which crime may be charged and therefore what penalties may be imposed, they do so to no greater extent than would a single statute authorizing various alternative punishments. So long as overlapping criminal provisions clearly define the conduct prohibited and the punishment authorized, the notice requirements of the Due Process Clause are satisfied." *Id.*

The Supreme Court also rejected the argument that overlapping criminal statutes create unfettered prosecutorial discretion. The United States Court of Appeals had held that such statutes could produce "unequal justice" because of unfettered prosecutorial discretion. *Id.* at 124. The Supreme Court, however, held that the prosecutor's discretion was limited by the constitutional prohibition against impermissible discrimination. *Id.* at 125. The Court then specifically compared the charging decision under overlapping statutes to the situation where the prosecutor chooses between statutes with different substantive elements:

> "More importantly, there is no appreciable difference between the discretion a prosecutor exercises when deciding whether to charge under one of two statutes with different elements and the discretion he exercises when choosing one of two statutes with identical elements. In the former situation, once he determines that the proof will support conviction under either statute, his decision is indistinguishable from the one he faces in the latter context. The prosecutor may be influenced by the penalties available upon conviction, but this fact, standing alone, does not give rise to a violation of the Equal Protection or Due Process Clause. Cf. *Rosenberg v. United States, supra,* at 294 (Clark, J., concurring); *Oyler v. Boles, supra,* at 456. Just as a de-

217

fendant has no constitutional right to elect which of two applicable federal statutes shall be the basis of his indictment and prosecution, neither is he entitled to choose the penalty scheme under which he will be sentenced. See U.S. Const., Art. II, secs. 2, 3; 28 U.S.C. secs. 515, 516; *United States v. Nixon, supra* at 694." *Id.*

Finally, the *Batchelder* decision dismissed the argument that overlapping statutes impermissibly delegate to prosecutors the legislative responsibility to fix criminal penalties. The Supreme Court noted that the legislature fixed the penalty under each statute and, therefore, the prosecutor's control over the penalty exposure was not greater than in other charging situations where conduct could be prosecuted under either of two statutes with different penalties. In correcting the court of appeals analysis, the Supreme Court stated:

"The provisions at issue plainly demarcate the range of penalties that prosecutors and judges may seek and impose. In light of that specificity, the power that Congress has delegated to those officials is no broader than the authority they routinely exercise in enforcing the criminal laws. Having informed the courts, prosecutors, and defendants of the permissible punishment alternatives available under each Title, Congress has fulfilled its duty. See *United States v. Evans, supra,* at 486, 492, 495." *Id.* at 126.

The defendant contends that *Batchelder* does not control the decision in this case. He distinguishes this case and *Batchelder* on the basis·that identical element crimes are involved here while only overlapping statutes were considered in *Batchelder.* He relies on *Mack v. State,* 93 Wis. 2d 287, 298–99, 286 N.W. 2d 563 (1980), where this court stated that *Batchelder* involved statutes which were not co-extensive. The defendant also isolates language from our decision in *State v. Karpinski,* 92 Wis. 2d 599, 611, n. 14, 285 N.W. 2d 729 (1979), where we contrasted

218

the *Batchelder* holding with our prior statement in *State v. Roggensack,* 15 Wis. 2d 625, 633, 113 N.W. 2d 389, 114 N.W. 2d 459 (1962), that if two statutes make the same conduct criminal:

> " '[T]heir coexistence would violate constitutional requirements of due process of law and of equal protection of the laws because of vagueness and uncertainty and the delegation to an administrative agency the choice of either section without any legal standards to govern such choice. Sec. 939.65, Stats., is not inconsistent with this proposition. Under this section the same act may form the basis for a crime punishable under more than one statutory provision. We do not construe the section to mean the same crime, but different crimes having some similar elements but not having identical elements.' " (Footnote omitted.)

The distinction noted by the defendant does not make the *Batchelder* holding inapplicable to identical statutes. The fact that the statutes under consideration in *Batchelder* were not co-extensive was not decisive. Instead, the fact that the statues were identical at the point of overlap and as applied to the facts of that case was decisive. The issues considered by the Supreme Court, including vagueness, excessive prosecutorial discretion, and impermissible delegation, all focused on the point of identity between the statutes. *See Roggensack,* 15 Wis. 2d at 633, where we identified precisely these same issues as relevant to the identical crimes situation. This focus was the only appropriate one because the points of nonidentity were irrelevant—the nonoverlapping parts of the statutes were not at issue because the defendant was not accused of that conduct. Only at the point of overlap can a defendant be charged with either of the two crimes. Overlapping statutes thus present the same issues as identical statutes because the point of overlap essentially creates an identical statute situation. We consider it significant that the Supreme Court decision, a unanimous opinion

219

written by Justice Marshall, specifically referred to identical criminal statutes. 442 U.S. at 125.

This court also has construed *Batchelder* to uphold "the power of the prosecutor to charge one of two criminal statutes containing identical elements as applied to the defendant but prescribing different penalties." *Karpinski,* 92 Wis. 2d at 610. In *Sears v. State,* 94 Wis. 2d 128, 139, 287 N.W. 2d 785 (1980), we again construed *Batchelder* to resolve the constitutional issues "when conduct violates two virtually identical criminal statutes." This court has not limited the *Batchelder* analysis to overlapping statutes.

The defendant draws an incorrect inference from *Karpinski* about the validity of the *Roggensack* language, which was dicta even when it was originally written. The statutes considered in *Roggensack* were not identical but only "almost identical." 15 Wis. 2d at 628–29. More importantly, the footnote in *Karpinski* did not state that *Roggensack* recognized a valid distinction between overlapping and identical statutes. We clearly recognized that *Roggensack,* which preceded *Batchelder* by seventeen years, was in direct conflict with the Supreme Court decision.[3]

Furthermore, the *Karpinski* decision, far from recognizing a distinction between overlapping and identical statutes, clearly anticipated our decision in this case. In *Karpinski,* we noted that *Batchelder* "upheld the power of the prosecutor to charge one of two *criminal statutes* containing identical elements as applied to the defendant but prescribing different penalties." 92 Wis. 2d at 610. (Emphasis added.) We used this language designedly even though *Karpinski* considered the validity of a municipal ordinance and a statute with identical substantive ele-

---

[3] We specifically introduced the *Roggensack* quote with the signal *"But see,"* which means that the cited authority directly contradicts the proposition to which it relates.

220

ments. Analogizing to the case of identical criminal statutes was reasonable because the only difference between the ordinance and the statute was the burden of proof necessary to establish guilt. *Id.* at n. 13. We then upheld the co-existence of the ordinance and the statute after applying the *Batchelder* discriminatory enforcement analysis. *Id.* at 616. Like the identical crimes case, *Karpinski* raised the same policy objection about excessive prosecutorial discretion. *Id.* at 604–05.

Our conclusion that *Batchelder* controls in the identical statute situation is consistent with the recent decisions of other jurisdictions. *See Klamath Falls v. Winters,* 619 P. 2d 217, 230–31 (Or. 1982); *State v. Pickering,* 462 A. 2d 1151, 1159–63 (Me. 1983); *Clark County v. Killman,* 691 P. 2d 434, 436 (Nev. 1984); *State v. Secrest,* 331 N.W. 2d 580, 583 (S.D. 1983); *Hart v. Alaska,* 702 P. 2d 651, 659–63 (Ala. App. 1985). The *Klamath Falls* decision is especially significant because the Oregon Supreme Court expressly overruled its previous decision in *State v. Pirkey,* 281 P.2d 698 (1955). That court concluded that *Pirkey* was inconsistent with *Batchelder.* Advocates of the identical statutes distinction had cited *Pirkey* as the most persuasive example of their position.

The defendant next attempts to avoid the *Batchelder* reasoning on the basis of this court's decision in *State v. Asfoor,* 75 Wis. 2d 411, 249 N.W. 2d 529 (1977). In *Asfoor,* we struck down the penalty provision of the felony crime of injury by negligent use of a weapon, sec. 940.24(1), Stats. We based our decision on the fact that the crime of homicide by negligent use of a weapon, obviously a more serious crime, was only a misdemeanor. We ruled that the penalty scheme was irrational because it punished the less serious crime more severely than the homicide crime. The defendant in this case relies on *Asfoor* to support his argument that the penalty scheme for identical element crimes must be the same. He contends that *Batchelder* did not consider this issue. Finally, he con-

221

tends that this court has continued to apply the *Asfoor* reasoning despite *Batchelder,* thereby recognizing its application to identical statutes. *See Sears,* 94 Wis. 2d at 139–40.

We conclude that *Asfoor* is inapplicable to this case. First, *Asfoor* did not involve identical crimes. Second, this case does not concern a situation where facially more serious conduct is treated less severely than other conduct. The statutes involved do not classify which persons should be charged under the felony statute and which under the misdemeanor statute. Differences in treatment between individuals, therefore, are determined as a matter of prosecutorial discretion. As *Batchelder* recognizes, such discretion is not unconstitutional unless the prosecutor discriminates on the basis of unjustifiable criteria. Here, the defendant makes no claim of impermissible discrimination and we can readily see legitimate bases for exercising prosecutorial discretion. For example, prosecutors reasonably may make their charging decision on the basis of the length of continuous nonsupport and the amount of money owed.

The availability of the felony abandonment offense also facilitates extradition in cases of flight across state lines. The United States Supreme Court in *Jones v. Helms,* 452 U.S. 412 (1981), recognized this valuable distinction between felony and misdemeanor crimes while upholding the constitutionality of the Georgia felony abandonment statute. The only difference between Georgia's felony abandonment statute and its misdemeanor abandonment statute was the element of interstate flight under the felony. While it is not necessary to have a felony charge to extradite, states are more inclined to extradite in the case of felonies. Furthermore, the FBI National Crime Information Center will not enter misdemeanors into the national computer system. Finally, states where paroled convicts relocate are more willing to supervise convicted felons than misdemean-

ants. While these reasons would not save a facility uncon-
stitutional statute, they are important in the exercise of
prosecutorial discretion.

Unlike *Asfoor,* we conclude that this case presents
the issue of identical element crimes with different penal-
ties. *Asfoor* involved disparate element crimes with pen-
alties that were inverse to the seriousness of the conduct.
The two issues require different analyses. This conclusion
is consistent with our continued application of *Asfoor* in
*Sears,* 94 Wis. 2d at 139, where the statutes did not create
identical element crimes.

Finally, although *Batchelder* technically is decisive
on the identical crimes issue only under the federal con-
stitution, we are persuaded that the same reasoning
should control under the Wisconsin Constitution. We pre-
viously have held that the due process and equal protec-
tion clauses of our state constitution and the United
States Constitution are essentially the same. Thus, in
*State ex rel. Sonneborn v. Sylvester,* 26 Wis. 2d 43, 49–50,
132 N.W. 2d 249 (1965), we stated:

> "Preliminarily, we point out that sec. 1, art. I of the
> Wisconsin constitution is framed in language of a Dec-
> laration of Rights and reminiscent of the Declaration
> of Independence, and *many times has been held to be
> substantially equivalent of the due-process and equal-
> protection clauses of the Fourteenth amendment to the
> United States constitution.* In *Black v. State* (1902), 113
> Wis. 205, 89 N.W. 522, the court said that the section
> must mean 'equality before the law, if it means any-
> thing,' and, 'The idea is expressed more happily in the
> Fourteenth amendment.' Again, in *Pauly v. Keebler*
> (1921), 175 Wis. 428, 185 N.W. 554, it was said in refer-
> ring to the Fourteenth amendment that the first arti-
> cle of the Declaration of Rights in our constitution was
> a substantially equivalent limitation of legislative
> power and 'our legislature is bound to accord all per-
> sons within its jurisdiction the equal protection of the
> laws.' More recently we reaffirmed the concept that

sec. 1, art. I, is to be equated with the Fourteenth amendment in *Boden v. Milwaukee (1959), 8 Wis. 2d 318, 99 N.W. 2d 156; Lathrop v. Donohue* (1960), 10 Wis. 2d 230, 102 N.W. 2d 404; and *Haase v. Sawicki* (1963), 20 Wis. 2d 308, 121 N.W. 2d 876. *Since there is no substantial difference between the two constitutions, we will henceforth refer only to the Fourteenth amendment of the United States constitution.*" (Emphasis added.) (Footnotes omitted.)

We reaffirmed this conclusion in *State ex rel. Cresci v. H&SS Dept.,* 62 Wis. 2d 400, 414, 215 N.W. 2d 361 (1974). Although secs. 52.05 and 52.055, Stats., are identical element crimes with different penalties, the state does not deny equal protection or due process by charging defendants with the more serious crime.

### VOID FOR VAGUENESS

The defendant next argues that the felony nonsupport statute violates due process because it is vague. He bases this conclusion on the argument that the phrase "wilfully neglects" is internally inconsistent. He construes "willful" to mean intentional and "neglects" to mean negligence, to reach this conclusion. *See State v. Balestrieri,* 87 Wis. 2d 1, 7, 274 N.W. 2d 269 (1978).

The "void-for-vagueness doctrine requires that a penal statute define the criminal offense with sufficient definiteness that ordinary people can understand what conduct is prohibited and in a manner that does not encourage arbitrary and discriminatory enforcement." *Kolender v. Lawson,* 461 U.S. 352, 357 (1983). In analyzing whether a particular statute is void for vagueness, two factors must be considered. First, "[a] criminal statute must be sufficiently definite to give a person of ordinary intelligence who seeks to avoid its penalties fair notice of

conduct required or prohibited." *Popanz,* 112 Wis. 2d at 173. Second, the "statute must also provide standards for those who enforce the laws and those who adjudicate guilt." *Id.*

We conclude that sec. 52.05(1), Stats., is not void for vagueness. The statute informs a person charged with abandonment that he must have willfully failed to satisfy his duty of support to his spouse or children. This standard provides adequate notice of the conduct proscribed by the statute to those who must obey it. It also provides a defined standard for those who must enforce the law and adjudicate guilt.

The defendant's argument that "wilful neglect" is internally contradictory is based on an improper definition of neglect. Neglect has a specific meaning in the support context that is different than the tort concept of negligence. Black's Law Dictionary (5th ed. 1979), defines wilful "neglect" as "the neglect of the husband to provide for his wife the common necessaries of life, he having the ability to do so; or it is the failure to do so by reason of idleness, profligacy, or dissipation." Black's also defines neglect as the designed refusal or unwillingness to perform a duty. We conclude, therefore, that neglect does not mean negligence in the support context. Neglect means breach of the duty of support. The defendant's argument that willful neglect is a contradictory standard lacks merit.

## STRICT LIABILITY CRIME

The defendant next argues that the felony nonsupport statute creates a strict liability crime for which the felony penalty is excessive. He bases this claim on the fact

that sec. 52.05(6), Stats.,[4] provides that proof of failure to support constitutes a prima facie violation of the statute. He reasons that this definition of a prima facie case eliminates any requirement of criminal intent. The defendant then concludes that strict liability crimes cannot be punished as a felony because of due process requirements.

We are unpersuaded that sec. 52.05(1), Stats., is a strict liability crime. This court has implicitly rejected such an argument by recognizing that inability to pay is a defense that rebuts the willfulness element. *See Galvin v. State,* 40 Wis. 2d 679, 683, 162 N.W. 2d 622 (1968); *Freiberg,* 35 Wis. 2d at 484. Also, the statute, by its express language, makes nonsupport a criminal intent crime. The willfulness element creates a requirement of criminal intent. The statutory defense of "just cause" not to provide support, sec. 52.05(1), further bolsters our conclusion that the statute does not create a strict liability crime. This construction of sec. 52.05(1) is consistent with our prior holdings that noncriminal code statutes that impose serious penalties generally require criminal intent. *See State v. Collova,* 79 Wis. 2d 473, 482.

Although we reject the defendant's argument that sec. 52.05(1), Stats., is a strict liability crime, a different conclusion would not invalidate the statute. Classifying a strict liability crime as a felony is not *per se* a violation of due process. This court previously has upheld strict liability statutes containing felony punishments. *See State*

---

[4] Sec. 52.05(6), Stats., provides in relevant part:

"Proof of the desertion of the spouse, child or children in destitute or necessitous circumstances or of neglect or refusal to provide for the support and maintenance of the spouse, child or children shall be prima facie evidence that such desertion, neglect or refusal is wilful. Substantial failure by any person to provide for such support or maintenance prior to the date when complaint is made under this section shall be prima facie evidence of intent hereunder."

*v. Stanfield,* 105 Wis. 2d 553, 561, n. 10, 314 N.W. 2d 339 (1982).

We conclude that sec. 52.05(1), Stats., does not violate equal protection or due process by penalizing identical conduct as a felony and a misdemeanor. We also find that the statute is not vague and that the penalty is not excessive. We therefore reverse the decision of the court of appeals.

*By the Court.*—The decision of the court of appeals is reversed and the cause is remanded to the trial court for further proceedings.

SHIRLEY S. ABRAHAMSON, J. *(dissenting).* Although broad prosecutorial discretion is an accepted part of our criminal justice system,[1] I conclude that the legislature's adoption of criminal statutes identical except for penalty is an unlawful delegation of power to the executive branch of government contrary to the separation of powers doctrine encompassed in the Wisconsin Constitution. Furthermore, resting such unbridled discretion in the prosecuting attorney violates our concept of fundamental fairness and equal protection of the laws. Art. I, secs. 1, 8(1), Wis. Const.; Amend. XIV, U.S. Const.

The majority opinion permits the legislature to adopt two or more criminal statutes identical in every respect except for the penalty provision without establishing criteria to guide the prosecutor in deciding under which statute an accused should be prosecuted. Thus the legislature could, for example, adopt the following three statutes making burglary a crime.

"**Sec. 943.10. Burglary.** Whoever intentionally enters a dwelling without the consent of the person in lawful

---

[1] See *State v. Karpinski,* 92 Wis. 2d 599, 607–609, 285 N.W. 2d 729 (1979). For a discussion of prosecutorial discretion, see *e.g.,* Vorenberg, *Decent Restraint of Prosecutorial Power,* 94 Harv. L. Rev. 1521 (1981); Comment, *Duplicative Statutes, Prosecutorial Discretion, and the Illinois Armed Violence Statute,* 71 J. Cr. L. & Crimin. 226 (1980).

possession and with the intent to steal shall be fined no more than $1,000 or imprisoned not more than 3 months in the county jail or both.

"**Sec. 943.101. Burglary.** Whoever intentionally enters a dwelling without the consent of the person in lawful possession and with the intent to steal shall be fined no more than $3,000 or imprisoned not more than 2 years or both.

"**Sec. 943.102. Burglary.** Whoever intentionally enters a dwelling without the consent of the person in lawful possession and with the intent to steal shall be fined no more than $10,000 or imprisoned not more than 10 years or both."

These statutes define the same conduct, under the identical circumstances, as a felony when committed by one person and as a misdemeanor when committed by another. The legislature gives the prosecutor no guidance in selecting the statute under which to prosecute.

It is axiomatic that the state prosecutes people for crimes under statutes enacted by the legislature. "The legislature determines what constitutes a crime in Wisconsin and establishes maximum penalties for each class of crime." *In re Felony Sentencing Guidelines,* 120 Wis. 2d 198, 203, 353 N.W. 2d 793 (1984).

By establishing more than one maximum penalty for the identical crime the legislature has effectively failed to fix a penalty for the crime of burglary. The legislature has abdicated its responsibility to set a penalty by allowing the prosecutor to determine the maximum penalty for the crime through selecting the statute under which to charge.

The majority, relying on *United States v. Batchelder,* 442 U.S. 114 (1979), asserts that this grant of power to prosecutors is constitutionally acceptable. *Batchelder* involved overlapping statues which set different punishments for the same behavior. The majority concludes that

the reasoning in that case is equally applicable to this case involving identical statutes. P. 215.[2]

I conclude there is a distinction between identical and overlapping statutes that renders *Batchelder* unpersuasive. In enacting overlapping statutes the legislature defines two or more different crimes and establishes a range of punishments for each. The legislature performs its constitutional task: it sets different penalties for legally distinguishable offenses, even though in some circumstances the same conduct may be punishable under each statute. As a practical matter, the legislature may not be able to define crimes without including conduct that may also be proscribed by another statute. Thus, empowering a prosecutor to choose among overlapping statutes may be necessary and unavoidable.[3]

By contrast, in enacting multiple criminal statutes identical except for the penalty, the legislature defines one crime, establishes several different ranges of punishments for that crime, and, without setting forth guidance, empowers the prosecutor to determine which of the ranges should be imposed in a particular case. The power to fix a range of punishments for a defined crime is the essence of the legislative function. In enacting identical criminal statues except for the penalty, the legislature has delegated its power to the executive branch without establishing standards for the exercise of the power. This

---

[2] The language in *Batchelder* may be interpreted to cover identical as well as overlapping statutes.

[3] The legislature has recognized this fact and sec. 939.65, Stats. 1983–84, provides that "If an act forms the basis for a crime punishable under more than one statutory provision, prosecution may proceed under any or all such provisions." See Wisconsin Legislative Council, 1953 Report, vol. 5, sec. 339.65.

Several commentators suggest that overlapping statutes are the result of sloppy legislative drafting. Furthermore courts and commentators have suggested that prosecutors should adopt guidelines for the exercise of their discretion. See references in note 1 *supra.*

is indeed "delegation running riot." *Schechter Poultry Corp. v. United States,* 295 U.S. 495, 553 (1935) (Cardozo, J. concurring).

Drawing the line between valid and invalid delegations of power is not easy. While the delegation involved in overlapping statutes may be defensible, I conclude that the delegation involved in identical statutes is not. This court should draw the line of constitutionality between the two.

The majority upholds the two identical statutes, concluding that the discretion delegated to prosecutors by identical statutes is not significantly different from the discretion delegated to prosecutors by overlapping statutes. In both instances, according to the majority, the prosecutor has discretion to determine whether a person will be charged and, if so, under what statute; in both instances, according to the majority, the prosecutor fixes the maximum penalty for the proscribed conduct by the charge.

The majority relies on the prosecutor's already existing broad discretion to measure the constitutionality of the legislature's adoption of multiple criminal statutes identical except for penalty. The standard for determining what constitutes acceptable delegation must be something other than the farthest extension of delegated power. The appropriateness of delegated power should be measured by looking anew at the underlying constitutional doctrine. Thus the standard must be whether the legislature has abdicated its responsibility to legislate in a particular circumstance, not whether the delegation of power is similar to another delegation. The path of improvident jurisprudence is incremental.

The delegation of legislative power must be accompanied by standards reasonably adequate under the circumstances. Although legislative delegation to prosecutors through overlapping statutes may be a practical necessity, the legislature neither needs nor ought to pass multiple criminal statutes identical except as to penalty.

The legislature can, of course, adopt a single statute setting forth the same range of punishments for burglary as the three burglary statutes I described above. Empowering the prosecutor to prosecute under one burglary statute which has a range of punishments is different from empowering the prosecutor to choose among three criminal statutes identical except for penalty. In the former situation, the prosecutor does not establish the penalty; the circuit court imposes a sentence within the legislatively established range according to criteria established by the legislature and this court. The circuit court must set forth its reasons for imposing the sentence, and the judgment is subject to appellate review. Thus the circuit court's discretion in selecting punishment from a statutory range of penalties established by the legislature is regulated and guided. In the latter situation the circuit court imposes a sentence within the range established by the prosecutor who functions without regulation or guidance by the legislature or the court.

In affirming the defendant's conviction under the felony statute, the majority also disregards the fundamental concept underlying due process and equal protection: fairness requires that people should not arbitrarily be treated differently. The majority discusses equal protection as though the constitutional command protects only against discriminatory prosecution based upon race, gender, or other suspect classification. The equal protection guarantee is broader than the majority acknowledges. Equal protection shields persons not only from "suspect classifications" but from classifications that are not rational. The legislature has not set forth any rational basis to guide the prosecutor in distinguishing between the felony and misdemeanor statutes in this case. I conclude that criminal statutes identical except for penalty violate due process and equal protection.

As the defendant correctly points out, this court has said that identical criminal statutes with different penal-

ties are unconstitutional under the constitutional requirements of due process, equal protection, and delegation of legislative powers. In *State v. Roggensack,* 15 Wis. 2d 625, 633, 113 N.W. 2d 389, 114 N.W. 2d 459 (1962), the court said that if two statutes make the same conduct criminal,

> ". . . . their coexistence would violate constitutional requirements of due process of law and of equal protection of the laws because of vagueness and uncertainty and the delegation to an administrative agency the choice of either section without any legal standards to govern the choice. . . ."

Even though we established in *Roggensack* that criminal statutes identical except for penalty would be unconstitutional, the majority chooses to follow *Batchelder* rather than *Roggensack.* The majority correctly acknowledges that it is not bound by the *Batchelder* decision. P. 223. That decision involved a federal prosecution, the powers of Congress, and the Federal Constitution, whereas this case involves a state prosecution, the powers of the state legislature, and the Wisconsin Constitution. I do not find the *Batchelder* reasoning regarding due process, equal protection, or unlawful delegation of legislative power persuasive in the case before us. *Roggensack* is good law.[4] The *Roggensack* rule requires the legislature

---

[4] The majority attempts to get around *Roggensack* by characterizing the language as *dicta.* P. 220. This characterization conflicts with this court's definition of *dictum.* In *State v. Kruse,* 101 Wis. 2d 387, 392, 305 N.W.2d 85 (1981), the court said: ". . . 'when a court of last resort intentionally takes up, discusses, and decides a question germane to, though not necessarily decisive of, the controversy, such decision is not a dictum but is a judicial act of the court which it will thereafter recognize as a binding decision.' "

The two statutes considered in *Roggensack,* although virtually identical in language, were, contrary to the majority's assertion at p. 220, essentially dissimilar: one was a civil statute and the other criminal.

to perform its legislative function to define a crime and establish penalties. *Roggensack* protects our citizens from arbitrary prosecutorial discretion. I see no reason why this court should not follow this state's established precedent.

For the reasons set forth, I would affirm the decision of the court of appeals dismissing the felony charge.[5]

I am authorized to state that CHIEF JUSTICE NATHAN S. HEFFERNAN and JUSTICE WILLIAM BABLITCH join in this dissent.

---

15 Wis. 2d at 632. The court held that the civil and criminal statutes could coexist but that two identical criminal statutes could not.

The majority does some revisionist reading of *Karpinski,* which also involved the coexistence of a criminal statute and a civil statute. The legislature set a criterion for distinguishing between the two—the standard of proof. The fact situation and issue presented in *Karpinski,* as well as the decision itself, are very limited. In *Karpinski* the prosecutor's discretion was limited to deciding whether to prosecute under the criminal statute; the prosecutor in that case did not have the power to initiate a civil prosecution and thus had no discretion to choose between a criminal and civil prosecution. Persuaded by the reasoning of *Batchelder,* the court said that the prosecutorial discretion at issue in *Karpinski* was not appreciably different from the prosecutorial discretion that exists in ordinary criminal cases where there is no analogous civil statute. The *Karpinski* court therefore upheld the validity of the criminal complaint in that case. The court expressly refrained from deciding "whether it is an unconstitutional exercise of prosecutorial discretion for a single prosecutor to determine whether to prosecute a civil or criminal action for the same conduct in the absence of guidelines established by the prosecutor for the exercise of such discretion." *Karpinski, supra* 92 Wis. 2d at 612, n. 17. *Karpinski* did not, as the majority asserts, "clearly . . . [anticipate] our decision in this case." P. 220.

[5] Where there is doubt as to which of two punishments is applicable to an offense, the accused is entitled to the benefit of the lesser. See *State v. Bohacheff,* 114 Wis. 2d 402, 417, 338 N.W. 2d 466 (1983).