DANIEL KELLY, J.
(concurring).
¶ 65. Both the State and Mr. Villamil want us to find an ambiguity in Wis. Stat. § 343.44, but for different reasons. The State would create out of this ambiguity a new criminal offense—strict-liability Operating After Revocation. Mr. Villamil, on the other hand, would use the ambiguity to secure a misdemeanor punishment instead of a felony sentence. The court agreed the statute is ambiguous, but without showing it to be so. Consequent upon this unexplained premise, it embarked on a wholly unnecessary exploration of legislative history, the rule of lenity, and the due process implications of prosecutorial discretion. As a result, I cannot join Part III of the court's opinion.
HH
¶ 66. I disagree with the court's assumed premise. It said "the interaction between Wis. Stat. § 343.44(1)(b) and Wis. Stat. § 343.44(2)(ar)4 creates ambiguity because the same offense is punishable as either a misdemeanor or a felony." Majority op., ¶ 29. But the plain language of the statute does not allow such an option. It provides for a felony or nothing at all.
*28 ¶[ 67. Notwithstanding our fretting, applying Wis. Stat. § 343.44 to Mr. Villamil is entirely straightforward. The first step, of course, is determining the meaning of the statute, which begins with the language the legislature used. If there is a plain meaning to be found there, that is where the analysis also ends.[1] Mr. Villamil's situation requires us to consider the statute's definition of the crime with which he is accused (Wis. Stat. § 343.44(1)(b)), as well as the penalty to which he is subject (Wis. Stat. § 343.44(2)(ar)4.).
¶ 68. The offense of "Operating After Revocation" is defined as follows: "No person whose operating privilege has been duly revoked under the laws of this state may knowingly operate a motor vehicle upon any highway in this state during the period of revocation .. .." Wis. Stat. § 343.44(1)(b) (emphasis added). The penalty for this offense depends, in part, on whether the person harmed others while committing the offense. If the driver causes the death of another, as Mr. Villamil did, the statute provides the following penalty:
Any person who violates sub. (l)(b) and, in the course of the violation, causes the death of another person shall be fined not less than $7,500 nor more than $10,000 or imprisoned for not more than one year in the county jail or both, except that, if the person knows at the time of the violation that his or her operating privilege has been revoked, the person is guilty of a Class H felony.
Wis. Stat. § 343.44(2)(ar)4 (emphasis added).
*29 ¶ 69. Mr. Villamil says this language prevents him from knowing whether he is subject to a misdemeanor or a felony penalty. But if we give careful attention to how the actual language of the offense and penalty provisions of this statute operate, it will become almost immediately apparent that this isn't so. There are four words in this statute that are especially important to its proper functioning. The first is "knowingly," and it appears in the definition of the offense. The next two are "except that"—they appear in the penalty provision and serve as the hinge point for the gate that gives access to either the misdemeanor or the felony penalty. The last is "know," and it helps tell us which way the gate should swing.
¶ 70. I begin with the definition of the offense, where we find that Operating After Revocation is not a strict liability crime. It requires that the defendant know his privilege has been revoked: "No person whose operating privilege has been duly revoked under the laws of this state may knowingly operate a motor vehicle . . . during the period of revocation . . . ." Wis. Stat. § 343.44(l)(b) (emphasis added). Thus, if the person does not know he is operating a motor vehicle while his operating privileges are revoked, he cannot be prosecuted under this statute at all. Mr. Villamil knew he was driving while his operating privilege was revoked—as did everyone else convicted under this version of the statute—and so he was properly convicted of this offense.
¶ 71. Upon conviction, the court must proceed to the penalty phase. Because Mr. Villamil caused a death while operating with revoked privileges, we turn to Wis. Stat. § 343.44(2)(ar)4. for the appropriate penalty. There is no doubt this penalty provision describes *30 both misdemeanor and felony sentences. But there is also no doubt that it is impossible to be sentenced as a misdemeanant under Wis. Stat. § 343.44(2)(ar)4.
f 72. The key to applying this penalty provision lies in the hinge point created by the "except that" clause in subsection (2)(ar)4. The misdemeanor penalty lies on one side of it, the felony on the other. The condition identified by the "except that" clause controls which way the gate swings. Satisfy the condition, and the defendant is a felon. Leave it unsatisfied, and the defendant is instead a misdemeanant.
¶ 73. This condition is where we come across the fourth important word—"know." Here it is in context: " [E]xcept that, if the person knows at the time of the violation that his or her operating privilege has been revoked . . . ." Wis. Stat. § 343.44(2)(ar)4. So the condition that controls which way the gate swings is whether the defendant knew, or did not know, that he was operating his vehicle after revocation. Mr. Villamil satisfied the condition because he knowingly operated his vehicle after revocation.
¶ 74. Mr. Villamil is not the only one who will satisfy this condition upon arriving at subsection (2)(ar)4. In fact, everyone who reaches this subsection satisfies the condition. For the gate to swing open on the misdemeanor penalty, the defendant who stands for sentencing must not have known he had operated his vehicle after revocation of his driving privileges. But we know that will never happen because "knowing" is an element of the offense—so the gate is always open only to the felony penalty. Thus, so long as the statute remains as it is, there will never be a pathway to the misdemeanor penalty.
1 75. So the only way to access the misdemeanor portion of subsection (2)(ar)4.—as written—is to stop *31 reading it before reaching the "except that" language. But that is no way to read a sentence. One must persevere to the period, and there is no way to get there without encountering the exception.
¶ 76. That brings me back to the alleged ambiguity, which—remember—is supposed to be that a prosecutor could opt between misdemeanor and felony penalties. Because the statute's explicit terms welded the gate closed on the misdemeanor option, the plain language can yield no such prosecutorial discretion. So it turns out the alleged ambiguity, the thing we spent so much time and effort fixing, is a problem of our own creation. We called it into existence by substantially re-writing subsection (2)(ar)4. To make the misdemeanor and felony sentences equally available, we had to make that statute say this:
Any person who violates sub. (l)(b) and, in the course of the violation, causes the death of another person shall be fined not less than $7,500 nor more than $10,000 or imprisoned for not more than one year in the county jail or both, except that, if the person knows at the time of the violation that-his-or-her-opera-t-in-g privilege-has-be&n-rev&ked; or the person is guilty of a Class H felony.
We didn't explain why we should do this, nor did we even acknowledge we did it. When the curtain went up and our analysis started, the statute made its first appearance with this meaning already attached to it. Responsibility for that meaning lies not with any deus ex machina, it lies with us.
¶ 77. It is true that, one way or another, some part of subsection (2)(ar)4. is going to be inoperable. It will happen either because we recraft the language, or because we apply the language as adopted by the legislature. Unfortunately, the court chose the former. *32 It struck out the "except that" clause that previously governed how the gate swings and transferred its erstwhile function to the State's prosecutors. We are supposed to be chary of such readings. Kalal, 271 Wis. 2d 633, ¶ 46 ("Statutory language is read where possible to give reasonable effect to every word, in order to avoid surplusage.").
¶ 78. The part of subsection (2)(ar)4. that is inoperable is the part providing for a misdemeanor penalty. That inoperability, however, does not result from judicial language-tweaking. It results from the inexorable operation of the statute's duly adopted words. The legislators orphaned the misdemeanor penalty, but it was theirs to orphan and it is no business of ours to countermand them. We do not dishonor Kalal's admonition by applying the statute as written because we did not create the surplusage. It was already there when Mr. Villamil brought it to us. If there is to be surplusage, let it be a result of the legislature's work, not ours.
¶ 79. As a practical matter, we have a pretty good idea of how this problem came to be; it was most likely a drafting error. See Majority op., ¶¶ 31-34. The legislature apparently aimed at changing "Operating After Revocation" to a strict liability offense, but with a more onerous penalty for knowing violations. It didn't quite get there. We do not, however, have the authority to complete what it started. Therefore, because we can apply the language as it exists, and the result is neither irrational nor absurd, that is what we should have done. Because we didn't, I cannot join Part III of the court's opinion.
II
¶ 80. Perhaps the court reached the conclusion it
did because, at its core, the analysis rests on an *33 enigma: The court said Wis. Stat. § 343.44 is ambiguous, but it did not say why. Ambiguity arises, of course, when a statute "is capable of being understood by reasonably well-informed persons in two or more senses." State ex rel. Kalal v. Cir. Ct. for Dane Cty., 2004 WI 58, ¶ 47, 271 N.W.2d 633, 681 N.W.2d 110. If that occurs, we apply our disambiguation canons to get at the proper meaning. The first step, however, is diagnostic—we must determine whether the statute can carry multiple meanings.
¶ 81. The court skipped this step and jumped straight to the conclusion that a statute giving prosecutors discretion to seek either misdemeanor or felony penalties is ambiguous. But if that is true, then our opinion thoroughly undercuts itself. While naming this discretion an ambiguity, we simultaneously affirmed that it is just fine so long as the prosecutor does not unjustifiably discriminate against the defendant in making his choice. Quoting State v. Cissell, we said "the fact that the defendant's conduct may be chargeable under either of two statutes does not make prosecution under one or the other statute improper per se . . . ." Majority op., ¶ 45 (quoting State v. Cissel, 127 Wis. 2d 205, 216, 378 Wis. 2d 691 (1985)). We didn't so much as breathe the word "ambiguous" in that case. And for good reason—Cissel relied largely on United States v. Batchelder, in which the Supreme Court ruled that no ambiguity arises from statutes that provide different penalties for the same conduct. 442 U.S. 114, 121 (1979).
¶ 82. So our opinion is at odds with itself. Charging options of this nature are either ambiguities in need of resolution (pace Batchelder), or they are legitimate grants of discretion to prosecutors. They can't be both. Thus, when we say Wis. Stat. § 343.44 "creates *34 ambiguity because the same offense is punishable as either a misdemeanor or a felony," we are creating an ambiguity. Our opinion could be understood as asserting that a statute that allows for misdemeanor/felony charging options is, on that basis alone, ambiguous. Or it could be understood as assuming the existence of ambiguous (and unidentified) language that could be read as allowing for such charging options. If it is the former, our opinion refutes itself. If it is the latter, we should have identified the ambiguous language and described the two senses in which it could be understood. Because we didn't, the issue around which all else revolved—the statute's alleged ambiguity— remained an enigma to the last.
I I—I I—I
¶ 83. Because I do not agree that Wis. Stat. § 343.44is ambiguous, I cannot join Part III of the court's opinion. However, I join the rest of it, and the mandate, because the plain and unambiguous language of Wis. Stat. § 343.44 requires that Mr. Villamil receive a felony sentence.
¶ 84. I am authorized to state that Justice REBECCA GRASSL BRADLEY joins this concurrence.

 State ex rel. Kalal v. Cir. Ct. for Dane Cty., 2004 WI 58, ¶ 45, 271 Wis. 2d 633, 681 N.W.2d 110 ("[Statutory interpretation 'begins with the language of the statute. If the meaning of the statute is plain, we ordinarily stop the inquiry.'" (quoting Seider v. O'Connell, 2000 WI 76, ¶ 43, 236 Wis. 2d 211, 612 N.W.2d 659)).